## DAVIDSON ET AL. V. DAVIDSON ET AL.

FRAUD—MISTAKE: *Relief against: Bona fide purchasers.*
> A party who carelessly executes a deed which includes a tract of land not intended to be conveyed, under the fraudulent misrepresentation of the grantee that it includes only the land purchased, may have relief against the grantee but not against a subsequent purchaser for value without notice of the fraud or mistake.

APPEAL from *Arkansas* Circuit Court, in Chancery.
Hon. X J. PINDALL, Circuit Judge.

*P. C. Dooley* for appellants.

If the deed was a forgery, no title passed, and there can be no innocent purchaser. *37 Ark., 205; 49 Am. Dec., 390; 32 Ib., 545; 20 Wend., 267; 39 Am. Dec., 557; 6 Rob. La., 192; 28 Am. Dec., 482–685; 4 Whart. Pa., 382; 10 Penn. St., 295; Nemo plus Juris a alieno transferre potest quamipse habet. 2 Kent's Com., 324; 10 Pet., 175; 1 Smith L. C., 7th Am. ed., 1195; 40 Ill., 320; 43 Mo., 216; 10 Tex., 109; 16 Wall., 550; 25 Am. Dec., 606.*

According to the weight of the evidence the deed *was* a forgery. If the lands in controversy were included in the deed by mistake, or a fraud practiced, equity will relieve. *35 Ark., 103.*

Price does not bring himself within the rule of innocent purchasers. (*29 Ark., 568; 27 Ib., 102 ; 1b., 6 ; 31 Ib., 87– 98 ; 34 N. J. Eq., 496 ; 58 N. Y., 73.*) There must be a denial of notice down to the time the purchase money is paid and deed made.

Appellees are barred by limitation.

*G. W. Davidson, pro se,* makes the same points as the above.

*Martin & Trimble, J. A. Gibson* and *J. M. Pinnell* for appellees.

Argue from the evidence that the deed is genuine.

A bill to quiet title will not lie unless parties are in possession. Treated as a bill to quiet title *27 Ark., 234* is conclusive. Appellees being in possession the remedy was ejectment. *37 Ark., 645; 24 Ib., 745; Ib., 431; 27 Ib., 77; Ib., 414; 29 Ib., 612; 30 Ib., 579.*

Even if a mistake was committed, equity will not reform a deed against an innocent purchaser. Where one of two innocent parties must suffer loss, it must be borne by him to whose act or omission it is due. (*11 Ohio, 542 ; 16 Penn , 357 ; 31 Ib., 331*; *Herman's Law of Estoppel, sec. 427.*) Price had a right to stand upon the title as it appeared upon the deed. *16 N. H., 122-127 ; 31 Mo., 400*

The land has been continuously, openly, etc., and adversely occupied by Price and vendors for more than eight years, and the statute invests title in him. *Wash. Real Prop., vol. 3, p. 145-6, 156; 26 Ark., 368 ; 34 Ark., 54; 33 Ark., 151.*

EAKIN, J. The object of this suit was to effect the cancellation or reformation of a certain conveyance of lands, upon the alleged alternative grounds, that, either it was a forgery; or, if not, that there was such a mistake as to its provisions as required reformation. It was intended thereby to quiet the title of complainants to certain lands which had in his lifetime been owned by Jackson Davidson, deceased.

Outside of the question of forgery, in case it should be established, there would arise the supervening question of adverse possession by the defendants, beyond the period of limitation. The facts are as follows:

On the fourteenth of March, 1868, Jackson Davidson,

being the owner of a large body of lands, conveyed to George W. Davidson a portion of them lying contiguous to the others. The lands so conveyed were the northeast quarter of section twelve, and the east half of the southwest quarter, and the west half of the southeast quarter of section one, making a tolerably compact body of three hundred and twenty acres.

To eighty acres of this Jackson Davidson had then no title of record, to wit, the north half of the northeast quarter of section twelve. He had received a conveyance of it from two parties, Belknap and Marquis, which had been lost. After his death, however, Belknap who had acquired the title to the whole, conveyed this half quarter to Sallie E., the wife of George W. Davidson, with the latter's consent. This deed was executed on the twenty-fourth of April, and filed for record on the twenty-fifth of June, 1877. The expressed consideration was $100. Jackson had died intestate on the nineteenth of January, 1873, leaving lands and personalty. Amongst his heirs was a brother, Matthew O. Davidson, the uncle of George W., who was the son of a deceased brother.

There were other heirs, six in all. No administration was taken upon his estate. They all agreed that Matthew O. should take the property as his own, pay the debts, and make of it what he could, and to carry that out, intended to execute to him a deed of release of all their interests. They did so, and the controversy in this case regards that instrument. Whether the deed copied from the records and relied upon by the defendant, Price, who claims under Matthew, be the real deed of relinquishment, or whether the real one has been suppressed and this be a forgery, is the pivotal question. Complainants, G. W. and wife and grantee, contend that the real relinquishment was only general in its terms with re-

gard to all interests in Jackson Davidson's estate, describing no lands specifically; and that George W., in signing it, did not pass, nor mean to pass the lands conveyed to him by Jackson in his lifetime, which lands were no part of his estate at death. The original instrument attacked, and which it is sought to cancel, has been brought before us by "*subpœna duces tecum*" for our examination. It specifically describes as part of the lands of the estate, the tracts claimed by complainants. It bears no date, but purports to have been acknowledged before Thomas J. Atwood, a justice of the peace, on the twentieth day of March, 1873. It is written without erasures or interlineations, on a sheet of foolscap, occupying only one leaf of the sheet. The deed itself and signatures taking up a page and a half of the reverse—the acknowledgment filling out the second page, leaving the other leaf of the sheet blank. It is signed by all the heirs of Jackson, save Matthew.

It bears upon its face nothing suspicious except that it may be noted the lands conveyed formerly to George W. are not included in the mass of lands properly belonging to the estate, but are added in another clause; which may nevertheless have been an innocent afterthought. The deed was not then recorded. The complainants, George W. and wife and Mary T. Butler, to whom George W. afterwards conveyed all of his interest, insist, that this is not the instrument which George W. and the other heirs actually executed; that the real instrument was a very short document, of not exceeding twelve or fifteen lines, containing a sweeping and general release of their interest in Jackson's eatate, without any descriptions of property. George W. says that when he signed there were two or three signatures of other heirs already attached; whereas, in the instrument in question, his own appears first.

On the twenty-fifth of December, 1875, M. O. Davidson, by a short instrument, in consideration of one dollar, released to Isaac M. Rowan, "all my rights, titles and interest to and unto the estate of my deceased brother, Jackson Davidson." No property was described. The release was witnessed and duly acknowledged, but does not appear to have been recorded.

On the thirty-first of January, 1876, as appears by an indorsement on the instrument here shown, Rowan paid the fee, and caused it to be recorded as the genuine relinquishment of the heirs of Jackson to M. O. Davidson.

If genuine, it ends the controversy, unless George W. signed it under such mistake as a court of chancery will, under the circumstances, correct—a matter to be considered later.

The defendants hold under Rowan by several mesne conveyances, all the lands in the body once owned by Jackson, including those in controversy. Valuable considerations in the several transfers have been paid by the purchasers, and there is nothing to affect them with notice of any trusts. When this instrument was executed and recorded, the wife of George W. Campbell had not acquired any interest, save a possibility of dower, which she of course can not now assert, during coverture, if ever. It would be a question whether Belknap had any title left in him to convey to her, and her husband's assent would amount to nothing after he had conveyed all his estate to Mathew O.

The proofs which tend to show forgery are substantially these: George W. Davidson swears positively that this is not the relinquishment he signed, and that he never acknowledged any. The paper he signed contained only about fourteen or fifteen lines, on a piece of account paper; that there were then signatures on it above his. He

does not suspect that the forgery was done by his uncle, M. O.

John B. Butler, the husband of M. E. Butler, one of the heirs, says that he signed a relinquishment, with other heirs, of his wife's interest, after the death of Jackson Davidson. His name does not appear on that in question. His wife did not sign at the time, or if she ever did, witness does not know it. Witness never acknowledged his signature before any officer. The paper he signed was a very short one, about half a sheet on one side of the paper, foolscap size. None of the heirs of Jackson Davidson claimed the lands in controversy as belonging to his estate.

Sarah M. Coldcleugh, (formerly Willis) and one of the heirs, says she executed, with others, an instrument of release, which she read before signing, but which she never acknowledged, so far as she can remember. The instrument described no lands, simply conveying their interest in the estate. It was quite short, in about fifteen lines, leaving space below the signatures. Her name was about the third. In that exhibited her name is fourth.

Thomas J. Atwood, the justice of the peace, whose name appears to the certificate, denies all recollection of having taken the acknowledgment; does not think he ever did. He feels sure that he would have recollected it if he had, for the parties are all neighbors. They never came to his office in a body on the same day to make such joint acknowledgment as the certificate purports, and he would have remembered it if he had gone to their homes.

A disinterested witness, Thomas Green, says the relinquishment was on a strip of paper about six by ten inches. The names of the heirs came to the center of the paper. There were about eight signatures, and that of G. W. Davidson was near the last. The witness had it in his possession and custody three or four months, and was then

requested by M. O. to turn it over to Rowan. He declined to do so until he received a note from George W., directing it. He swears positively that it was not acknowledged, and that there was in it no specifications of lands by numbers. The release was only in general terms.

*John R. Walton* says the relinquishment was signed by himself, his wife and other heirs. His name does not appear to the deed exhibited, but that of Jennette D. Walton does. He says it was very short, and in general about as follows: " We, the heirs of J. Davidson, do quit claim to all our rights and interest in the real and personal property of J. Davidson to Dr. M. O. Davidson." This, he says, was never acknowledged before any officer.

These are depositions for complainants. The deed in question is signed, and by the certificate purports to have been acknowledged by G. W. Davidson, Sallie M. Willis, Jennette D. Walton, M. E. Butler and Ann S. Davidson.

Upon the other hand, two witnesses testified that they were acquainted with the handwriting of G. W. Davidson, and that his signature to the instrument exhibited was genuine. One of them also testified that he was acquainted with the handwriting of Atwood, the justice, and that the body of the certificate, and the signature thereto, was in that hand.

The court held the instrument genuine, and dismissed the suit for want of equity. The complainants appeal.

We derive little aid from the inspection of the original document, except upon two points, which tend to support the finding of the court. The body of the deed and that of the certificate of acknowledgment were evidently written by different persons, and the body of the certificate is in the hand of the justice's signature.

If the instrument is a forgery it is the work of two

hands, which would have much increased the danger and chances of detection.

The other point is that, upon inspection, we find the paper such that when folded one way, being thin, it presents the appearance of a short instrument, occupying with writing and signature about half a page of foolscap. Although written on the reverse side, this would not be apt to be noticed by parties executing it carelessly, as we presume all the heirs did, except G. W. Davidson. They had nothing to be careful about. Davidson, himself, says he was busy, and executed it hurriedly.

It is somewhat notable too, in a case of this nature, that neither G. W. Davidson, nor Atwood, nor a single one of those who deny any recollection of having executed this instrument, denies that his or her signature is genuine. That is, looks at it, and specifically says so. Their testimony would have carried more conviction if they had. The complainants seem to have had access to the paper, and could have used it that way. We do not know that Atwood or Davidson, or any of the signers, would deny their signatures if asked and called to examine it. The sight might have revived recollection. It is certainly strange that so much has been forgotten, and that so many should concur in a false impression. Yet the proof of forgery is not satisfactory, and it is a thing which should be shown with considerable preponderance to overcome the presumption against felony, and the strong *prima facie* effect of an official certificate of acknowledgment.

It is obvious that if there was any mistake on George W. Davidson's part, as to the contents of the instrument he signed, it was the result of his carelessness, and his confidence in Matthew O., his uncle. He says his uncle told him at the time that the instrument did not mean to include the lands which Jackson Davidson had conveyed in

his lifetime, only those belonging to the estate, and that he signed hastily, in the bustle of business, and without examination.

That might be ground of relief against M. O., but not against innocent purchasers from him for value, who relied upon recorded title. It is not a case of mutual mistake of facts, as if both parties had supposed an instrument to express or omit something which it did not, but it would be, if the allegations were true, a case of fraud by misrepresentation. In no view, however, would one suffering from such mistake or fraud have an equity for relief from the effects of his carelessness to the detriment of a subsequent purchaser for value, without notice. Here there have been several mesne conveyances between Matthew O. Davidson and the defendant, Price, who now claims the lands, amongst persons to whom no notice nor hint of fraud has been brought home. The question of limitation is not important. The defendant need not resort to it. The deed of the heirs to Matthew O. being sustained, nothing ever vested in Mrs. Davidson, the wife of George W., and the deed of George W. and wife executed to complainant, Mary T. Butler, was subsequent to the record of the deed of the heirs of Jackson to Matthew O., which include the same lands and was signed by George W.

We find no error in the decree.

Affirmed.