Russell JEFFERS *v.* AMERICAN PIONEER LIFE INSURANCE Company, MILLER BUICK Company & GENERAL MOTORS ACCEPTANCE Corporation

73-262                                                  507 S.W. 2d 713

Opinion delivered April 1, 1974
[Rehearing denied May 6, 1974.]

*Paul K. Roberts,* for appellant.

*Frierson, Walker, Snellgrove & Laser,* by: *G. D. Walker,* for appellees.

J. FRED JONES, Justice. This is an appeal by Russell Jeffers from a chancery court decree granting summary judgment in favor of American Pioneer Life Insurance Company on a credit insurance policy issued to Jeffers in connection with his purchase of a Buick automobile.

On February 21, 1972, Jeffers filed his petition in chancery alleging that on November 11, 1969, the Educators and Professional Life Insurance Company of Little Rock executed and delivered to him an insurance policy containing a total disability provision whereby the company agreed to pay Miller Buick Company the unpaid balance on a Buick automobile Jeffers had purchased under a conditional sales contract payable at $91.76 per month and subsequently assigned to General Motors Acceptance Corporation. The policy was made an exhibit to the petition and Jeffers alleged that sometime after November 11, 1969, the appellee, American Pioneer Life Insurance Company, assumed all liability to Jeffers under the policy issued by Educators. Jeffers then alleged that he suffered a heart attack on August 30, 1971, and on that date became disabled within the meaning of the insurance policy. He then alleged in substance, that all the monthly payments due under the policy had been paid with the exception of the first two monthly payments following the onset of his disability, and he prayed judgment for

$201 past due and for specific performance of the insurance contract.

In answer to interrogatories propounded to American Pioneer, it answered that in 1970 it assumed liability under the life insurance policies issued by Educators. Miller Buick Company as first beneficiary under the policy and its assignee GMAC were made parties defendant under orders of the chancellor following a demurrer filed by American Pioneer. American Pioneer then filed an answer admitting its liability under the policy and admitting Jeffers' disability within the terms of the policy as alleged in his petition. American Pioneer then alleged that the insurance contract contained a sixty day waiting clause and that it did not owe the monthly payments for the sixty day waiting period. By way of cross-complaint. American Pioneer interpleaded the amount it admitted it then owed into the registry of the court.

On the basis of the pleadings, admissions and exhibits, American Pioneer filed a motion for summary judgment on October 5, 1972, and on January 22, 1973, Jeffers filed an amendment to his original petition alleging that when the contract of insurance was entered into on November 6, 1969, between him and Educators, that J. H. Miller was acting as a general agent for the insurance company and that J. H. Miller, or a salesman acting for him, represented to Jeffers that the policy would be in force and would pay all installments on the conditional sales contract from the onset of his disability. He alleged that he did not read the policy but relied on the representations of Miller as to what the insurance policy would contain, and in his amendment he prayed that the insurance contract be reformed to state the true contract entered into by the parties on November 6, 1969. American Pioneer again filed motion for summary judgment and the motion was granted.

On appeal to this court Jeffers contends that the chancellor erred in granting the motion for summary judgment and dismissing the complaint. We agree with American Pioneer that the chancellor did not err.

It is clear from the pleadings, admissions and exhibits in the record that Jeffers obtained his policy at the time he

purchased the automobile on November 6, 1969, and did not question its provisions until after the liability under it was assumed by American Pioneer in 1970, and after he became disabled on August 30, 1971, and claim was filed. As a matter of fact, it would appear that Jeffers did not question his policy provisions until after he filed his original petition for specific performance on February 21, 1973.

The exact language, pertaining to his failure to read the policy, is set out in Jeffers' amendment as follows:

"... the plaintiff did not read the contract of insurance sold to him by J. H. Miller but relied entirely upon the representations of the said agent of Educators and Professional Life Insurance Company as to the provisions the said policy was to contain."

Mr. Jeffers' amendment praying reformation of the contract was still against American Pioneer and not against Educators or its agent Miller. Even so, Mr. Jeffers did not allege a *mutual* mistake, nor did he allege that Miller or his salesman said or did anything of a fraudulent nature to cause him to not read his policy; he simply said he relied on the statement of Educators' agent, Miller, or one of his salesmen, as to the provisions the policy *was to* contain. Jeffers sued American Pioneer first for specific performance of the contract it had assumed, and then to reform the contract which had been assigned to it, on the ground that the written contract so assigned did not reflect the true agreement entered into between Jeffers and American Pioneer's assignor.

The pertinent provisions of the policy, filed as an exhibit to the complaint, appear as follows:

"I hereby apply to Educators and Professional Life Insurance Company, Little Rock, Arkansas for a Term policy of life insurance for the amount and for the period stated below."

The policy then sets out the name, address and age of the insured; the names of first and secondary beneficiaries; the total period and amount of insurance with stated premium. The policy provisions then continue as follows:

| "Monthly Benefit for Total Disability | Period | Waiting Period |
|---|---|---|
| $91.76 | 36 months | 60 days" |

The policy then states that the disability benefits are *not* retroactive to the first day and the language of the policy continues as follows:

"The Company agrees to pay in the manner hereinafter set forth the amount of insurance requested in the application above . . .

This policy is issued in consideration of the above application, which is hereby made a part hereof, and of the payment of the required premium to the Company's Agent . . . and is subject to the terms and provisions set forth on the reverse side hereof, all of which are made a part hereof.

IN WITNESS WHEREOF, the Educators and Professional Life Insurance Company, Little Rock, Arkansas, has caused this policy to be executed by its duly authorized officers.

I hereby certify that the facts and answers recorded in the above application are fully complete and believed by me to be true and that the applicant, in my opinion, is in good health.

| 11-6-69 | /S/ J. H. Miller | Tilman Busters |
|---|---|---|
| Date | Company Agent | President |

I HEREBY CERTIFY that I have made true and complete answers to all the questions contained in this my application for insurance and I agree that they shall form a basis and consideration for the insurance for which I hereby apply, and I further certify that I signed my name hereto in the presence of the Company's Agent who asked me all the questions enumerated above.

I AM NOW IN GOOD HEALTH

/S/ Russell Jeffers
Insured's Signature"

Under a section of the policy designated "General Terms and Provisions" appears language as follows:

"This policy constitutes the entire contract. No agent shall have the power of authority to waive, change or alter any of the terms or conditions of this policy."

Under the "Total Disability Benefits Provisions" of the policy appears language as follows:

"If the insured shall become totally and continuously disabled . . . the Company will pay after the number of days in the waiting period, a daily benefit . . . for Total Disability specified in the schedule for the remaining number of days of such disability or for the unexpired term of the policy, whichever is the shorter period."

Thus, it is clear from the face of the policy that Jeffers must have received his insurance policy as a result of his written request contained in, and made a part of, the written contract he entered into with Miller as an agent for Educators and Professional Life Insurance Company, and at the time he purchased the Buick automobile. Jeffers alleges that he relied on statements made by Miller or his salesman as to what the policy would contain, but his written and signed application would indicate that the insurance company relied on the written statements and requests made by Jeffers as to the nature, amount and provisions of the insurance desired and as set out in the written contract signed by both Jeffers and Miller. It would appear that Jeffers was bound to have read the pertinent portions of the contract if he read the application he signed, because the pertinent provisions of the contract were embodied and clearly set out in the application.

It is, of course, a well-settled rule of law that before a written contract can be reformed it must appear that it fails to express agreement of the parties because of mutual mistake or mistake on one side and fraud and inequitable conduct on the other. *Weiss* v. *Turney*, 173 F. 2d 617. We shall not explore the case law relative to failure to read a written contract however, for we rest our conclusion on another ground that the decree must be affirmed.

There is no evidence that the appellee American Pioneer had any notice of the alleged oral representations made to Jeffers by Miller when it assumed Educators' liabilities under the written insurance contract. In Williston on Contracts, 3rd ed., § 1548, is found a statement as follows:

"Nor will equity reform a contract where acquired rights of *bona fide* purchasers for value would be disturbed."

Then, quoting from cases, Williston says:

" 'It is an almost universal rule of equity not to grant relief by way of reformation to the injury of innocent third persons such as bona fide purchasers, lien holders and others who without notice have acquired intervening or vested rights and who cannot be placed in statu quo. It is an unalterable rule of equity that such an innocent third person will not be affected by a latent equity, and in that respect the equity to reform stands on the same footing with any other equity.' "

In the early case of *Davidson* v. *Davidson*, 42 Ark. 362, also cited by Williston, an attempt was made to cancel or reform an instrument for conveyance of land upon the alternative grounds that either it was a forgery or that there was such a mistake as to require reformation. The land was conveyed to a third party under a description which was under attack. In that case this court said:

"It is obvious that if there was any mistake on George W. Davidson's part, as to the contents of the instrument he signed, it was the result of his carelessness, and his confidence in Matthew O., his uncle. He says his uncle told him at the time that the instrument did not mean to include the lands which Jackson Davidson had conveyed in his lifetime, only those belonging to the estate, and that he signed hastily, in the bustle of business, and without examination.

That might be ground of relief against M. O., but not against innocent purchasers from him for value, who relied upon recorded title. It is not a case of mutual mis-

take of facts, as if both parties had supposed an instrument to express or omit something which it did not, but it would be, if the allegations were true, a case of fraud by misrepresentation. In no view, however, would one suffering from such mistake or fraud have an equity for relief from the effects of his carelessness to the detriment of a subsequent purchaser for value, without notice."

While it has been held that the inclusion in a deed of land not intended to be conveyed, either through careless execution of the deed or through the fraudulent misrepresentations of the grantee, is ground for relief against the grantee, it is not ground for relief against a subsequent purchaser for value without notice. *Davidson* v. *Davidson*, 42 Ark. 362. See also *Adams* v. *Edgerton*, 48 Ark. 419, 3 S.W. 628.

In *Brodie* v. *Skelton*, 11 Ark. (6 Eng.) 120, a bill brought to correct a mistake in the description of lands conveyed in trust, and to divest the title acquired by one of the defendants subsequent to the execution of the trust deed, charged that the debtor, after conveying the land in trust, by an absolute deed conveyed to another, who in turn conveyed to defendant's grantor, by whom it was subsequently conveyed to defendant, the court held that no decree could be rendered against defendant without making his grantor a party.

The decree is affirmed.