Betty Sue PARKER and Carol Jane PARKER
Co-Executrixes of the Estate of Parker Parker,
Deceased *v.* Alfred W. PLEDGER et al

CA 80-110                                              601 S.W. 2d 897
Court of Appeals of Arkansas
Opinion delivered July 9, 1980

*Gardner & Gardner*, by; *Richard E. Gardner, Jr.*, for appellants.

*Richard L. Peel*, for appellees.

ERNIE E. WRIGHT, Chief Judge. Appellants co-executrixes of the estate of Parker Parker, deceased, appeal

from a decree of the chancery court dismissing the estate's petition to reform and foreclose a second mortgage upon the home of appellee Pledger. F.H.A. holds the first mortgage on the real estate and for this reason the United States of America was made a party to the action.

Appellee Pledger borrowed $50,000 from the Bank of Russellville, hereinafter referred to as the Bank, in November, 1972, and secured the loan with a mortgage on a store building and fixtures and inventory. Parker Parker, an attorney now deceased, signed the $23,000 note as a surety and to protect himself obtained the signature of Pledger on an instrument dated October 18, 1974, referred to as note and also on a real estate mortgage to secure said note. The description in the mortgage called for Lot 9 of Parkhill Addition to Dardanelle, and the mortgage recited the existence of a prior mortgage of record but does not identify the prior mortgage. The document referred to as a note reads as follows:

$23,000.00        Dardanelle, Arkansas 10/18- 1974

24 Monthly after date due in equal promise to pay _____ or order Payments Payable at First National Bank — Dollars Russellville as Addition Security for Parker Parker endorsing Alfred Pledger Note to said Bank for value received, with interet at the rate of 10 per cent per annum from date until paid, interest payable annually. If interest be not paid annually, to become as principal and bear the same rate of interest. Witness My hand and seal.

/s/ Alfred W. Pledger (Seal)

The Bank on October 24, 1972, assigned to Parker Parker without recourse the $50,000 note, and on October 14, 1976, assigned to him the original $23,000 note dated October 17, 1974, along with a renewal note for the same dated October 29, 1975, together with the security agreement.

On October 27, 1976, Pledger was adjudicated a bankrupt and the Parker estate thereafter on June 10, 1977,

filed its amended claim as a secured creditor for the sum of $43,920.78 on the $50,000 note and the sum of $14,177.28 on the $23,000 note. Thereafter the bankruptcy judge allowed the amended claim in favor of the Parker estate in the total sum of $58,986.00. The real estate and personal property securing the indebtedness evidenced by the two notes were sold in the bankruptcy proceeding and the trustee paid the estate the sum of $49,971.98. Pledger was released by the bankruptcy court from all dischargeable debts on February 28, 1977.

Thereafter, appellants filed an action on the above mentioned note and mortgage held by Parker estate, sought judgment for $24,932.96 and foreclosure on Lot 9 of Parkhill Addition. Later appellants filed an amended petition reducing the amount alleged to be due the estate to $17,239.35. In January, 1979, appellants further amended their petition and alleged there was a scrivener's error in the land description to Lot 92 of Parkhill Addition.

Appellee answered the petition denying indebtedness to the estate and pleading his discharge from bankruptcy as a further defense. In addition he alleged the October, 1974, $23,000 note to the Bank, which Parker co-signed was released by the execution of a renewal note; and Parker thereafter became the owner of the renewal note and the only security for payment was the personal property in the security agreement.

At trial Pledger testified he had no knowledge of having executed the mortgage on Lot 9 of Parkhill Addition to Dardanelle or the document referred to in the mortgage as a promissory note, but the signature on each was his signature. He had never owned Lot 9, but does own Lot 92 of Parkhill Addition which is his home. His home was not disturbed in the bankruptcy proceeding, and he testified it was supposed to be encumbered only by the F.H.A. mortgage. He denied his signature was affixed to the documents knowingly and denied acknowledging the mortgage before a notary public. The notary who executed the acknowledgement of the mortgage testified she had no recollection of the document or of Pledger acknowledging it. Pledger further testified Parker

frequently got him to sign documents in blank which Parker did not allow him to read. The evidence does not show what part of the $49,971.98 paid out of the bankruptcy assets was produced by the sale of assets securing the $23,000 note Parker cosigned.

Appellant Betty Sue Parker, the only witness testifying as to the amount of the alleged indebtedness, testified the debt was $9,126.08, but modified her testimony to state the amount to be $8,126.08. She was unable to explain how the figure was determined other than taking the claim as allowed by the bankruptcy court and subtracting the amount paid the estate by the trustee, leaving a net balance of $8,126.08.

At the conclusion of the evidence of the court held the mortgage in question was security to Parker for a $23,000 note on the Bank he co-signed for Pledger on or about the same date, that the note to the Bank had been satisfied by a renewal note, and that the mortgage in issue does not extend security to assure payment of the renewal note of the Bank executed in October, 1975. Decree was entered dismissing the complaint.

For reversal appellant contends the trial court erred in finding the mortgage in issue was extinguished by renewal of the $23,000 note to the Bank, and erred in failing to reform the mortgage and grant foreclosure.

We conclude the trial court based its decision on an erroneous conclusion of law and that the execution of a renewal note for $23,000 in October, 1975, did not operate to extinguish the debt for which the original October, 1974, note was executed. The original note was retained by the Bank and later assigned to Parker along with the renewal note, and the renewal was merely an extension of time for the payment of the debt. *Bank of Dermott* v. *Measel*, 172 Ark. 193, 287 S.W. 1017 (1926). However, we review chancery appeals de novo, and if we determine from the record the result of the decree to be correct, we affirm, even though the reason given by the trial court is incorrect. *Apple* v. *Cooper*, 263 Ark. 467, 565 S.W. 2d 436 (1978).

First, we conclude the indebtedness was not established by the evidence. The only witness who attempted to establish the indebtedness did not produce in court underlying data to establish an unpaid balance on the $23,000 note to the Bank other than the copy of the order of the bankruptcy court allowing the claim in favor of the Parker estate on the two secured notes in the total amount of $58,098.06, and that $49,971.98 was paid on the claim by the trustee. No other payments had been made from any source after allowance of the claim. However, the mere allowance of an uncontested claim by the bankruptcy court simply determines the creditor is entitled to a dividend out of the bankruptcy assets in the hands of the trustee. Such an allowance is not res judicata and does not estop the bankrupt from defending a subsequent suit by the creditor. The allowance of an uncontested claim is not binding on the bankrupt except as to the assets in the bankruptcy proceeding. 8A C.J.S. Bankruptcy § 444; *Walley* v. *United States*, 259 F. 2d 579 (1958); *United States* v. *Verrier*, 179 F. Supp. 336 (1959). Appellee denied any unpaid indebtedness and failure of appellant to establish the debt by competent evidence supports dismissal of the complaint.

Secondly, the document bearing the signature of Pledger and offered in evidence by appellants as a note is not in fact a note. A note whether it be a negotiable instrument or otherwise, must contain a promise to pay to the bearer or an identified payee. The instrument which appellants present as a basis for the mortgage does not name a payee and is not payable to the bearer. It is neither a negotiable nor non-negotiable note. Ark. Stat. Ann. § 85-3-102(1)(b) requires that to be negotiable the instrument to whom the promise to pay is addressed must be identified with reasonable certainty. The instrument here in question refers to payments payable at the Bank and contains no express promise to pay bearer or any named person.

In 10 C.J.S., Bills and Notes, § 7 (4) b, it is stated a note must include the following:

Payment must be promised absolutely and unconditionally for the instrument to be a note, either

negotiable or nonnegotiable. If the instrument contains no promise to pay, it cannot be a note.

We are unable to say the instrument here contains an absolute and unconditional promise to pay. In fact, the evidence shows the document was never intended to be an unconditional promise to pay, but it purports to provide security to the co-signer for payment of the note held by the Bank. Thus, appellants concede the note was intended only to be a conditional obligation. It should be kept in mind that the Parker estate would not be entitled to recover a deficiency under the $23,000 note assigned to Parker by the Bank as any balance of that obligation was released upon the discharge of Pledger from bankruptcy.

We conclude the instrument is not a note securing a debt to the Parker estate. Pledger was not indebted to Parker when the document was executed and the document contains no promise to pay Parker. The instrument creates no obligation for the mortgage to secure, and appellants are not entitled to foreclose.

Third, we conclude the evidence for reformation of the description in the mortgage does not warrant reformation. Before reformation may be granted because of mistake the mistake must be mutual. *Jeffers* v. *American Pioneer Life, Inc. Co.*, 256 Ark. 332, 507 S.W. 2d 713 (1974). There was no testimony that Pledger intended to give Parker a second mortgage on his home property. On the contrary, Pledger testified he never agreed or intended to mortgage his home to Parker, and that he did not knowingly execute the mortgage or appear before a notary and acknowledge same. The notary had no recollection of the mortgage, and Pledger further testified Parker often insisted upon his signing instruments that were blank. To justify the court in reforming the instrument, the evidence must be clear, cogent and decisive. *North* v. *Griffin*, 227 Ark. 402, 298 S.W. 2d 700 (1957). We conclude the evidence in favor of reformation does not meet that test.

Affirmed.