METCO, INC., APPELLANT, V. STEVEN A. HUFFMAN, APPELLEE.
511 N.W.2d 780

Filed February 1, 1994.   No. A-92-592.

Donald L. Swanson and Gregory C. Scaglione, of Koley, Jessen, Daubman & Rupiper, P.C., for appellant.

Mark A. Klinker, of Klinker & Pivovar, for appellee.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

SIEVERS, Chief Judge.

This case presents the first impression issue of whether the allowance of an administrative claim by the bankruptcy court in partnership bankruptcies constitutes a judgment which can thereafter form the basis for imposition of personal liability upon the individual general partners in a bill of equity brought pursuant to Neb. Rev. Stat. § 25-316 (Reissue 1989). Section 25-316 provides:

> If the plaintiff, in any judgment so rendered against any company or partnership, shall seek to charge the individual property of the persons composing such company or firm, it shall be lawful for him to file a bill in equity against the several members thereof, setting forth his judgment and the insufficiency of the partnership property to satisfy the same, and to have a decree for the debt, and an award of execution against all such persons, or any of them as may appear to have been members of such company, association or firm.

## FACTUAL BACKGROUND

Maryland Plaza, a commercial structure used primarily for office purposes and located on 72d Street in Omaha, was purchased by Maryland Plaza Partnership (Maryland), a general partnership. Maryland held the property for a matter of days until the formation of, and the transfer of the property to, Maryland Plaza Partnership, Ltd. (Maryland Ltd.), a limited partnership. Steven A. Huffman, the appellee, and Harold R. Young were the general partners of both partnerships. Maryland and Maryland Ltd. filed voluntary petitions in bankruptcy. In February 1990, the bankruptcy court converted

both bankruptcy proceedings from chapter 11 reorganizations to chapter 7 proceedings. During the course of the chapter 11 proceedings, an opportunity arose to sell Maryland Plaza, and the proposed sale was authorized by the bankruptcy court on July 25, 1989.

The loan for the purchase was to be secured by a first mortgage or a deed of trust, but the lending institution required an examination for asbestos and conditioned the loan upon the building's being asbestos-free. The inspection revealed that there was asbestos in the building. An agreement was entered into between the debtors (Maryland and Maryland Ltd.) and Kossuth Insulators, Inc., for the removal of the asbestos from the building. Metco, Inc., the appellant, was formerly known as Kossuth Insulators, Inc., but for clarity, we shall use Metco herein.

Anthony R. and Arlene L. Pantano held a deed of trust in Maryland Plaza, and on February 14, 1989, the bankruptcy court sustained the Pantanos' motion to sequester rents and profits. As a result, the rents were deposited into a cash collateral account for the Pantanos. On June 7, Metco began removal of the asbestos, and on June 29, Metco was paid $8,400 by a check drawn on the Pantanos' cash collateral account, which check was signed by a representative of the debtors as well as by the agent for the Pantanos. Although Metco completed the removal of the asbestos on July 5, the deal for the sale of the property fell through, and Metco has never been paid for the balance of its asbestos abatement work.

Following the collapse of the proposed sale, the Pantanos foreclosed their deed of trust and were the purchasers at the deed of trust sale held July 31, 1989. On August 2, Metco made demand upon the trustee for surcharge of the property under 11 U.S.C. § 506(c) (1988) for the cost of the asbestos removal in the amount of $30,617. On August 14, Metco filed an application for allowance of an administrative expense claim and for a § 506(c) surcharge of the property.

The Pantanos claimed that Metco lacked standing to use § 506(c) for surcharge. The memorandum of the bankruptcy court, dated June 1, 1990, found that Metco had standing, but denied the request for surcharge because the Pantanos had

acquired Maryland Plaza by foreclosure of their deed of trust, and thus, the property was no longer in the bankruptcy estate.

However, the bankruptcy court found that "[Metco] is entitled to an administrative expense claim in the amount of $30,617.00 for the benefit to the estate resulting from [Metco's] work. This Court also determines that [Metco's] claim is reasonable." After the bankruptcy court allowed the administrative expense claim, Metco appealed to the U.S. District Court for the District of Nebraska, arguing that the surcharge should have been allowed. That court disagreed and affirmed the decision of the bankruptcy court in all respects.

Metco then filed a petition in the district court for Sarpy County against Huffman and Young. The amended petition upon which this case was tried alleged that Huffman and Young were the general partners of Maryland and Maryland Ltd., that Metco held an administrative expense claim for asbestos abatement expenses against Maryland and Maryland Ltd., and that the property of both partnerships had been exhausted and was insufficient to pay its debts. The amended petition prayed for judgment against both Huffman and Young in the amount of $30,617 and "for such other and further relief as may be just and equitable." We do not deal with Young in this opinion, as he is not involved in this appeal.

Huffman's answer alleged that the administrative expense claim was not valid because he had no notice of the claim or the litigation and that he did not have standing to object to the administrative expense claim at the time it was filed, litigated, or granted. Finally, Huffman denied that the administrative expense allowed was a judgment against Maryland or Maryland Ltd.

After trial on May 8, 1992, the district court for Sarpy County dismissed Metco's amended petition, finding that the decision of the bankruptcy court on May 29, 1990, allowing the administrative expense claim for asbestos abatement "does not constitute a 'Judgment' as contemplated under Sec. 25-316."

## ASSIGNMENTS OF ERROR

Metco claims that the amended petition alleges a law action and an equity action. Since we decide the case on the basis of the

510

bill in equity, an equitable action, we discuss only the assignment of error that the district court erred in finding that Metco did not have a judgment against the Maryland and Maryland Ltd. partnerships.

## STANDARD OF REVIEW

■ In an equity action, an appellate court reviews the record de novo, and as to questions of law, the appellate court has an obligation to reach its own independent conclusions. *Drew v. Walkup*, 240 Neb. 946, 486 N.W.2d 187 (1992).

## ANALYSIS
### PRINCIPLES OF PARTNERSHIP LAW

The Nebraska Supreme Court, in *Horn's Crane Service v. Prior*, 182 Neb. 94, 96, 152 N.W.2d 421, 423 (1967), stated:

> "This court is committed to the doctrine that a partnership is a legal entity by a long line of cases. * * * However, the partnership relation is such that the separate property of a partner cannot be subjected to the payment of partnership debts until the property of the firm is exhausted.... Firm property must also be subjected to the payment of the firm debts before it can be applied to the debts of the individual members of the firm. . . . The partners are personally, jointly, and severally responsible for partnership liabilities. But the benefits and liabilities of a partner arise from and are the result of the partnership relation. Therefore in this state a partnership is an entity, distinct and apart from the members composing it, for the purpose for which the partnership exists...."

(Citations omitted.) Quoting *State v. Pielsticker*, 118 Neb. 419, 225 N.W. 51 (1929).

Consistent with the notion that a partnership is a separate and distinct entity from the members which compose it, the court in *Horn's Crane Service* stated that credit having been extended to a partnership or firm, the members thereof ought to have a right to insist that the partnership property be exhausted first and that an obvious injustice would occur if a firm creditor were to bypass partnership property and exhaust the assets of an individual member.

The "old" Bankruptcy Act (repealed in 1978) allowed for discharge of partnerships and corporations. However, the "new" Bankruptcy Act now limits discharge to "individual[s]." 11 U.S.C. § 727(a)(1) (1988). The framers stated that "[t]he change in policy will avoid trafficking in corporate shells and in bankrupt partnerships." H.R. Rep. No. 95-598, 95th Cong., 1st Sess. 384, *reprinted in* 1978 U.S. Code Cong. & Ad. News, 5787, 6340. However, even under the old act, the discharge of a partnership alone did not discharge the individual general partners from the partnership debts. 1A Collier on Bankruptcy, ¶¶ 16.02 and 16.07 (14th ed. 1978). Here, there is no claim by Huffman that the bankruptcies of Maryland and Maryland Ltd. resulted in his personal discharge, and it is clear that an individual partner who does not receive a discharge as an individual under § 727(a)(1) remains liable.

## BILL IN EQUITY

The law of this state has long been that the fundamental condition precedent to the bringing of a bill in equity against individual partners is a prior judgment against the partnership. § 25-316; *Security State Bank v. McCoy*, 219 Neb. 132, 361 N.W.2d 514 (1985). See, also, *Leach v. Milburn Wagon Co.*, 14 Neb. 106, 15 N.W. 232 (1883). *Security State Bank* also holds that the petition for a bill in equity must allege insufficiency of partnership property to satisfy the judgment and that there must be proof thereof. In the case at bar, the necessary allegation is present in the amended petition. From the record, the only thing which could possibly be considered partnership property is the $6,400 remaining in the Pantanos' cash collateral account. We need not decide whether this is partnership property, since it is obviously insufficient to satisfy a $30,617 obligation.

## JUDGMENT

Huffman contends that "[t]he single issue raised at trial to be considered on appeal is whether the administrative claim allowed in the Bankruptcy Court constitutes such a judgment." Brief for appellee at 6. Huffman argues that the administrative expense is not a prior judgment against the Maryland and Maryland Ltd. partnerships, as it is simply a determination by

the bankruptcy court that the creditor, in this case Metco, is entitled to payment out of the bankruptcy assets, if any, in the hands of the trustees and that such allowance is not res judicata and does not estop the bankrupt from defending a subsequent suit by the creditor. Huffman relies principally upon *Walley v. United States*, 259 F.2d 579 (9th Cir. 1958); *United States v. Verrier*, 179 F. Supp. 336 (N.D. Maine 1959); and *Parker v. Pledger*, 269 Ark. 925, 601 S.W.2d 897 (Ark. App. 1980). Conversely, Metco argues that the order of the bankruptcy court allowing the administrative expense claim is in fact a judgment, citing *Levy v. Cohen*, 19 Cal. 3d 165, 561 P.2d 252, 137 Cal. Rptr. 162 (1977), *cert. denied* 434 U.S. 833, 98 S. Ct. 119, 54 L. Ed. 2d 94. Nebraska has not previously decided whether a claim for an administrative expense allowed by the bankruptcy court is a judgment within the meaning of § 25-316.

■ Fed. R. Civ. P. 54(a) provides that a " '[j]udgment' as used in these rules includes a decree and any order from which an appeal lies." Neb. Rev. Stat. § 25-1301 (Reissue 1989) provides that "[a] judgment is the final determination of the rights of the parties in an action." A judgment is a court's final consideration of the respective rights and obligations of the parties to an action as those rights exist at the time. *Lemburg v. Adams County*, 225 Neb. 289, 404 N.W.2d 429 (1987).

ADMINISTRATIVE EXPENSES IN BANKRUPTCY ACTIONS

Administrative expenses have the highest priority in bankruptcy after secured claims because they consist of "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A) (1988). As pointed out in *Trustees of Amalgamated Ins. Fund v. McFarlin's*, 789 F.2d 98 (2d Cir. 1986), Congress granted this priority to administrative expenses in order to facilitate the efforts of the trustee or debtor in possession to rehabilitate the business for the benefit of the estate's creditors. Without such priority, persons would not do business with a debtor in possession, which would inhibit rehabilitation of the business and thus harm all the creditors.

The precise question of whether an allowed administrative expense from a bankruptcy court is a judgment under state law

is not extensively discussed in the cases. However, we first note *Woodley v. Myers Capital Corp.*, 67 Wash. App. 328, 835 P.2d 239 (1992), which involved an action by attorneys who had represented a limited partnership in bankruptcy proceedings and had been granted fees and expenses of nearly $32,000 by the bankruptcy court. *Woodley* was the state court action against the debtor's general partners to recover the fees and expenses. Although the opinion does not specifically so state, attorney fees are administrative expenses under § 503(b)(4). Therefore, the case is on point. The plaintiff in *Woodley* asserted that it need not relitigate its entitlement to this money because of principles of full faith and credit and res judicata. This is also Metco's basic assertion.

The appellate court in *Woodley* held that res judicata applies with full force in bankruptcy proceedings and that a judgment is preclusive if there is "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits." *Woodley v. Myers Capital Corp.*, 67 Wash. App. at 336, 835 P.2d at 244. These conditions were found to be satisfied, and therefore the attorneys were entitled as a matter of law to judgment against the general partners in the amount previously allowed by the bankruptcy court.

The Nebraska Supreme Court has addressed the subject of res judicata under federal law in *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993), which involved several lender liability lawsuits by the VanDeWalle family in federal court, as well as a bankruptcy. The lender liability case before the Supreme Court was filed in state court by two VanDeWalle sons after their parents' federal actions had failed. The court in *VanDeWalle* prefaced its analysis with the conclusion that if the federal proceedings had preclusive effect, then Albion National Bank was entitled to judgment as a matter of law in the suit before the Supreme Court. *VanDeWalle* holds that the federal law of res judicata is to be examined and applied when a state court is faced with the determination of the preclusive effect of a federal court's judgment. The Supreme Court then stated:

Under federal law, a final judgment on the merits

precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action. . . . The doctrine of res judicata bars relitigation of a claim if three requirements are met: (1) The prior judgment was rendered by a court of competent jurisdiction, (2) the decision was a final judgment on the merits, and (3) the same cause of action and the same parties or their privies were involved in both cases.

(Citations omitted.) *Id*. at 502, 500 N.W.2d at 571-72.

ADMINISTRATIVE EXPENSES AS JUDGMENT

*Jantzen v. Baker*, 131 Wis. 2d 507, 388 N.W.2d 660 (Wis. App. 1986), involved Baker's guarantee of his bankrupt corporation's debt to Jantzen. In the chapter 11 bankruptcy proceedings, Jantzen was listed as a creditor and was appointed to the creditors' committee. The reorganization plan included a provision that any personal guarantees of Baker be adjusted and reduced so as to be the same as the indebtedness and obligation of the underlying bankrupt corporation. The proposal was approved by the bankruptcy court, and Jantzen, who had had notice of the proposal, abstained from voting on the plan and did not object to confirmation of the plan. The plan confirmed by the bankruptcy court placed Jantzen in a class of creditors entitled to recover 20 percent of their claims. Jantzen then commenced this action in the state courts of Wisconsin against Baker on his personal guarantee, seeking to recover the full amount of the outstanding balance. The Wisconsin court's analysis began with the recognition that the principle of res judicata is based upon the belief that litigation must come to an end, as res judicata makes "final adjudication conclusive in any subsequent action between the same parties as to all matters which were, or could have been, litigated in the earlier proceeding." *Id*. at 510, 388 N.W.2d at 661. The court then held:

An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by the district court. *Miller v. Meinhard-Commercial Corporation*, 462 F.2d 358, 360 (5th Cir. 1972). As such, it is a final judgment for purposes of the doctrine of *res judicata*. 5 *Collier on Bankruptcy*,

sec. 1141.01 at 1141-5-6 (15th ed. 1986).

*Jantzen v. Baker*, 131 Wis. 2d at 510, 388 N.W.2d at 661.

It is of some import that the court in *Jantzen* observed that a bankruptcy is an in rem proceeding, and all persons concerned, including creditors, are deemed to be parties. Thus, the Wisconsin court found that Jantzen was a party to the bankruptcy proceedings in addition to being a member of the creditors' committee. The fact that Jantzen held Baker's guarantee, rather than the bankrupt corporation's guarantee, did not prevent the application of the doctrine of res judicata. In reaching that conclusion, the Wisconsin court relied upon the U.S. Supreme Court's decision in *Stoll v. Gottlieb*, 305 U.S. 165, 59 S. Ct. 134, 83 L. Ed. 104 (1938), where the Court held that the confirmation of a bankrupt corporation's reorganization plan which discharged several personal guarantees of the corporation's bonds barred a creditor's subsequent state court action against the guarantors. The Supreme Court in *Stoll* held that it is enough for purposes of res judicata that the issues could have been litigated, saying: "After a party has his day in court, with opportunity to present . . . his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue . . . ." (Emphasis omitted.) *Stoll v. Gottlieb*, 305 U.S. at 175. Accord *Jantzen v. Baker, supra*.

The Wisconsin court also relied upon *Levy v. Cohen*, 19 Cal. 3d 165, 561 P.2d 252, 137 Cal. Rptr. 162 (1977), *cert. denied* 434 U.S. 833, 98 S. Ct. 119, 54 L. Ed. 2d 94, which is also relied upon by Metco in this litigation. The California Supreme Court held that the doctrine of res judicata prevented readjudication in state court of all matters, including jurisdictional challenges, which were or might have been litigated in prior bankruptcy proceedings involving the same parties. The *Jantzen* court held that "Jantzen had ample opportunity to raise both its jurisdictional arguments and its objections to the reduction of Baker's guaranties in the bankruptcy proceedings. As a result, the final, unappealed order of the bankruptcy court is *res judicata* and binds the trial court." *Jantzen v. Baker*, 131 Wis. 2d at 514, 388 N.W.2d at 663.

We now examine *Levy v. Cohen, supra*, in more detail. *Levy* was an action brought by a creditor against the general partners

of a limited partnership. The trial court entered judgment against the general partners, and they appealed. The California Supreme Court, adopting the opinion of the California Court of Appeal, reversed the trial court's judgment. The California Supreme Court found that Levy, an unsecured creditor of the limited partnership, had notice in the bankruptcy proceeding of the meeting confirming the plan under which the general partners were released from liability for the obligations of the limited partnership, and that when Levy raised no objection to the bankruptcy court's jurisdiction, the order confirming the plan was res judicata and barred the subsequent suit. Levy sought to avoid the impact of res judicata by claiming that the bankruptcy court was without jurisdiction to discharge the liability of the general partners for the obligations of the limited partnership. However, the California Supreme Court held that "the doctrine of res judicata prevents the readjudication of all matters (including jurisdiction) which were, or might have been, litigated in a prior proceeding between the same parties." *Levy v. Cohen*, 19 Cal. 3d at 173, 561 P.2d at 257, 137 Cal. Rptr. at 167.

The California Supreme Court found that the question of the liability of the general partners for the debts and obligations the limited partnership allegedly owed to Levy was not litigated in the bankruptcy proceeding, but that, nonetheless, if there was an opportunity to litigate that question, the failure to do so would not prevent the conclusive effect of the bankruptcy court's determination that the general partners were not liable for the debts of the limited partnership. Thus Levy was precluded from suing the general partners because the plan in the bankruptcy court which released them was res judicata. Consequently, the judgment of the trial court against Cohen and the other general partners was reversed.

A recent opinion of significance to our decision is *Matter of Baudoin*, 981 F.2d 736 (5th Cir. 1993). In that case, the chapter 7 debtors filed a state court lender liability action against the bank which allegedly had forced them into bankruptcy, and the bank filed the subject federal action to enjoin that state action. The bankruptcy court and then the federal district court denied the bank's attempt to enjoin the state action. The federal court

of appeals reversed, beginning its rationale with recognition of the important interest in the finality of judgments in a bankruptcy case. The court stated the

> traditional test for *res judicata* in the bankruptcy context: "An arrangement confirmed by a bankruptcy court has the effect of a judgment rendered by a district court. Any attempt by the parties to relitigate any of the matters that were raised *or could have been raised* therein is barred under the doctrine of *res judicata*." *Matter of Brady*, 936 F.2d 212, 215 (5th Cir.), *cert. denied*, ____ U.S. ____, 112 S.Ct. 657, 116 L.Ed.2d 748 (1991).

*Matter of Baudoin*, 981 F.2d at 739. The court also noted that because of spiraling litigation costs, congested courts, and expanding theories of recovery such as lender liability, "it [was] more imperative than ever that the doctrine of *res judicata* be applied with unceasing vigilance." *Id*. at 740.

The court in *Matter of Baudoin* set forth four requirements for a bankruptcy judgment to be res judicata with respect to a subsequent suit: "1) both cases involve the same parties; 2) the prior judgment was rendered by a court of competent jurisdiction; 3) the prior decision was a final judgment on the merits; and 4) the same cause of action is at issue in both cases." *Id*. Accord *Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979 (5th Cir. 1990). These requirements are no different from those outlined by the Nebraska Supreme Court in *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993), which we earlier quoted.

According to *Matter of Baudoin*, the bankruptcy court can enter final judgments in core proceedings. Non-core proceedings are those in which the bankruptcy court cannot enter a final judgment, but can only make proposed findings of fact and conclusions of law subject to de novo review by the district court. See 28 U.S.C. §§ 1334 and 157(c)(1) (1988). Section 157(b)(2) provides that core proceedings include matters concerning the administration of estates and other proceedings affecting the liquidation of the assets of estates.

In *Matter of Baudoin*, the debtor sought to assert a $4 million claim in state court against the bank which was a creditor in the debtor's bankruptcy. The federal court of

appeals said that it could not "be reasonably argued that a $4,000,000 claim belonging to a bankruptcy estate could not have any conceivable effect on that estate." *Matter of Baudoin*, 981 F.2d at 741. Consequently, the court held that the bankruptcy court had jurisdiction to hear the lender liability claim and that the jurisdiction was core, giving the bankruptcy court the ability to render a final judgment. The federal court of appeals also held that an order allowing a proof of claim was a final judgment. See *Matter of Colley*, 814 F.2d 1008 (5th Cir. 1987), *cert. denied* 484 U.S. 898, 108 S. Ct. 234, 98 L. Ed. 2d 193. Metco's claim for asbestos abatement imposed as a precondition of the debtors' sale of the property was clearly a matter which concerned the administration of the estate, and it affected the preservation and liquidation of the assets of the estate. See § 157(b)(2). As a core proceeding, the allowance by the bankruptcy court of Metco's administrative expense claim was a final judgment on the merits.

We next examine whether there was identity of causes of action between the bankruptcy proceedings for the allowance of the administrative expense claim and the instant suit. The Fifth Circuit in *Matter of Baudoin*, 981 F.2d 736 (5th Cir. 1993), used a test of whether the two actions were based upon " 'the same nucleus of operative facts,' " *id.* at 743, pointing out that a claim or defense which could have been asserted, but was not, is still the same claim for purposes of res judicata. Concluding that the loan transaction at the heart of the state court litigation was also the source of the bank's claim against the bankruptcy estate, the court in *Matter of Baudoin* applied the doctrine of res judicata, saying that a lender liability action could have been asserted in bankruptcy court in response to the bank's claim against the debtor. Thus, the federal court of appeals reversed the lower court's judgment, and remanded the cause for entry of injunctive relief against the state court lender liability action.

The court in *Matter of Baudoin* holds that the test of whether the same causes of action are involved is dependent upon whether the two actions are based on the same nucleus of operative facts. Nebraska law is the same: "Whether the subsequent suit alleges the same cause of action as the prior suit is determined by whether the right sought to be vindicated rests

upon the same operative facts. If so, the same cause of action has been alleged, even if different theories of recovery are relied upon." *Farmers State Bank v. Germer*, 231 Neb. 572, 577, 437 N.W.2d 463, 467 (1989). Here, there is only one operative set of facts. Metco had performed asbestos abatement at Maryland Plaza so that the debtors, who were then in a chapter 11 proceeding, could sell the property to a prospective purchaser. Huffman's answer alleges that Metco's services were rendered pursuant to a contract with, and for the benefit of, the Pantanos. This assertion was obviously available to Huffman in the bankruptcy court as a defense of Metco's claim for the administrative expense for asbestos abatement. The requirement of identity of causes of action is clearly satisfied.

Superficially, the cases do not appear to involve the same parties, as Metco was imposing the administrative claim against the Maryland and Maryland Ltd. partnerships, and Metco now sues Huffman individually. However, *VanDeWalle v. Albion Nat. Bank*, 243 Neb. 496, 500 N.W.2d 566 (1993), addresses the matter of privity where the parties are facially different (parents and sons) and holds that " '[p]rivity requires, at a minimum, a substantial identity between the issues in controversy and showing the *parties in the two actions are really and substantially in interest the same.*' " (Emphasis supplied.) *Id.* at 505, 500 N.W.2d at 573, quoting *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271 (10th Cir. 1989). We have little trouble in saying that Huffman, as a general partner in Maryland and Maryland Ltd., is in privity with those partnerships. Thus, for purposes of res judicata, the parties are the same when Metco asserts an administrative expense claim against the two partnerships and when Metco seeks to impose personal liability upon the general partner Huffman for that same administrative expense. The privity of parties requirement is satisfied.

We believe it is obvious that the requirement that the prior judgment be rendered by a court of competent jurisdiction is satisfied, as it is the bankruptcy court which has jurisdiction to allow administrative expenses. Therefore, the final requirement for applicability of res judicata is satisfied.

## CONCLUSION

In the present case, the doctrine of res judicata is applicable. The parties are legally the same, the causes of action arise from the same operative facts, and the judgment of the bankruptcy court, which obviously has jurisdiction over the administrative expenses, was the final judgment on the merits.

Huffman's argument for affirmance of the judgment of the district court for Sarpy County is that the allowance of an administrative expense in a bankruptcy is not an in personam judgment against the debtor, but only establishes the creditor's right to share in the bankruptcy estate. See, *Massee & Felton Lumber Co. v. Benenson*, 23 F.2d 107 (S.D.N.Y. 1927); *United States v. Verrier*, 179 F. Supp. 336 (D. Maine 1959); *Parker v. Pledger*, 269 Ark. 925, 601 S.W.2d 897 (Ark. App. 1980). After a thorough examination of these cases, we find they do not address the issue before us. Once the matter is analyzed under principles of res judicata, as we have done, it is clear that Metco held a judgment against Maryland and Maryland Ltd. within the meaning of § 25-316. Accordingly, the district court erred when it dismissed Huffman's bill in equity under § 25-316. We reverse, and remand for entry of judgment in Metco's favor on its bill in equity.

REVERSED AND REMANDED WITH DIRECTION.