[No. 28787-7-I. Division One. August 31, 1992.]

JOHN M. WOODLEY, ET AL, *Appellants*, v. MYERS CAPITAL CORPORATION, ET AL, *Respondents*.

*J. Richard Manning,* for appellants.

*Steven T. O'Ban* and *Ellis & Li; Edward L. Parks,* for respondents.

PEKELIS, J. — John M. Woodley and Bruce T. Thurston, general partners of the law firm of Woodley & Thurston (hereinafter referred to collectively as Woodley & Thurston), appeal from the dismissal of their claim for expenses and attorney fees for services rendered in connection with federal bankruptcy proceedings. Respondents cross-appeal, contending that the trial court erred in denying their motion for CR 11 sanctions. We affirm in part and reverse in part.

I

This case arises from Woodley & Thurston's action to collect expenses and attorney fees for services rendered in the following matters.

ODESSA BANKRUPTCY

On November 30, 1987, Woodley & Thurston was retained by Odessa Executel Limited Partnership (Odessa) to file a Chapter 11 bankruptcy petition to prevent the imminent foreclosure sale of certain real estate owned by Odessa. The general partners of Odessa were: Myers Capital Corporation, Myers Group II Limited Partnership, James P.K. Young, and Rodger R. Overson. All of the general partners eventually provided their written consent to the filing of the petition.

Woodley & Thurston filed Odessa's bankruptcy petition and subsequently provided a number of legal services in connection with the bankruptcy case. The firm also represented Odessa in various litigations with its primary secured creditor.

On June 24, 1988, pursuant to 11 U.S.C. §§ 330 and 331,[1] Woodley & Thurston applied to the bankruptcy court for an order authorizing payment of interim compensation for expenses and attorney fees for services rendered on behalf of Odessa through June 20, 1988. The application, which included pertinent billing records, sought compensation for legal services in the amount of $31,116.75 and reimbursement for expenses in the amount of $1,755.20. Notice of the hearing on the application was sent to Odessa's general partners and creditors. On July 28, 1988, the Bankruptcy Court entered an order for payment of Woodley & Thurston's interim expenses and compensation, having found the legal services rendered to be "reasonable and necessary".

On April 7, 1989, Woodley & Thurston obtained an order permitting it to withdraw as counsel for Odessa as the distribution of Odessa's assets had been completed. However, Woodley & Thurston continued to perform post-bankruptcy services on behalf of Odessa through September

---

[1] 11 U.S.C. § 330 provides, in pertinent part:

"§ 330. Compensation of officers

"(a) After notice to any parties in interest and to the United States trustee and a hearing, . . . the court may award to . . . the debtor's attorney —

"(1) reasonable compensation for actual, necessary services rendered by . . . attorney, as the case may be, . . . based on the nature, the extent, and the value of such services, the time spent on such services, and the cost of comparable services . . .".

11 U.S.C § 331 provides, in pertinent part:

"§ 331. Interim compensation

"A . . . debtor's attorney . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 330 of this title. After notice and a hearing, the court may allow and disburse to such applicant such compensation or reimbursement."

6, 1989. On September 28, 1989, the Bankruptcy Court dismissed the case.

### INTERSTATE 295 BANKRUPTCY

On March 30, 1988, Interstate 295 Investors Limited Partnership (Interstate 295) retained Woodley & Thurston to file a Chapter 11 bankruptcy petition to prevent the imminent foreclosure of certain property owned by Interstate 295. The general partners of Interstate 295 were Michael H. Myers and Myers Capital Corporation. Woodley & Thurston immediately filed Interstate 295's bankruptcy petition. On April 25, 1988, the Bankruptcy Court authorized Woodley & Thurston to represent Interstate 295, and the firm proceeded to provide a number of legal services on behalf of Interstate 295. In December 1988, Woodley & Thurston withdrew as counsel for Interstate 295. However, it continued to render "housekeeping" services for the trustee through September 6, 1989. On January 23, 1990, after distribution of Interstate 295's assets had been completed, the Bankruptcy Court entered an order discharging the trustee and closing the estate.

### SUPERIOR COURT ACTION

On March 10, 1989, Woodley & Thurston filed a complaint in King County Superior Court against Odessa's general partners and Michael Myers (hereinafter referred to collectively as the Myers) for expenses and attorney fees in which it requested, *inter alia*, $39,037.42 plus prejudgment and postjudgment interest for the Odessa matter and $1,108.16 plus prejudgment and postjudgment interest on the Interstate 295 matter.

On May 3, 1991, Woodley & Thurston filed a motion for partial summary judgment against Odessa's general partners for $40,816 including prejudgment interest for services rendered on the Odessa matter.[2] This amount included the

---

[2] However, Woodley & Thurston did not and does not now seek liability against Myers Capital Corporation which filed for bankruptcy under Chapter 7 on March 18, 1991. Pursuant to 11 U.S.C. § 362, any action against Myers Capital Corporation was stayed pending completion of the bankruptcy case.

interim compensation amount of $32,871.95. Woodley & Thurston also sought summary judgment against Interstate 295's general partners for $1,698.11 including prejudgment interest for services rendered on the Interstate 295 matter. In support of the motion, Woodley & Thurston submitted billing statements for both the Odessa and Interstate 295 matters. In opposition to the motion, the Myers apparently argued that Woodley & Thurston's expenses and fees were neither reasonable nor necessary and that it was not entitled to prejudgment interest.[3]

After a May 31, 1991, hearing, the trial court granted summary judgment in favor of Woodley & Thurston against the Myers on the issue of their liability for payment of expenses and fees incurred in the Odessa matter. However, the trial court denied summary judgment on the amount owed, stating that:

[p]laintiffs shall be required to prove the reasonableness and necessity of fees and expenses sought against Defendants. Defendants may present evidence as to the date of their acquiescence in the filing of the bankruptcy proceeding but such evidence will not necessarily be dispositive of these issues.

The trial court also denied Woodley & Thurston's request for prejudgment interest and treated the Myers' motion in opposition as a cross motion for partial summary judgment disallowing prejudgment interest, which it then granted.[4]

On June 12, 1991, two of Odessa's general partners, Young and Overson, filed a motion to dismiss the action against them, arguing *inter alia*, that the trial court lacked subject matter jurisdiction. They also sought CR 11 sanctions against Woodley & Thurston for seeking to collect expenses and attorney fees to which it allegedly knew or should have known it was not entitled as a matter of law. On June 17, 1991, the trial court dismissed the action against

---

[3]The Myers' memorandum in opposition is not part of the record on appeal, but is referred to in Woodley & Thurston's reply memorandum.

[4]The trial court apparently did not rule on Woodley & Thurston's subsequent motion for reconsideration.

Young and Overson on the ground that "this court is without jurisdiction to take any action whatsoever involving fees to attorneys in federal bankruptcies." Young and Overson's request for sanctions was denied, as was their subsequent motion for reconsideration. The trial court entered an amended dismissal order on July 3, 1991, which included Odessa's other general partners and Michael Myers.

Woodley & Thurston appeals from the dismissal of its claim for expenses and attorney fees. It also contends that it is entitled as a matter of law to payment of the interim amount which had been previously ordered by the Bankruptcy Court and to prejudgment interest on that amount. The Myers cross-appeal, contending that the trial court erred in denying their motion for CR 11 sanctions against Woodley & Thurston.

## II

We first address Woodley & Thurston's contention that the trial court erred in dismissing its claim against the Myers for expenses and attorney fees. The trial court concluded that it lacked subject matter jurisdiction over the claim based on its apparent belief that federal bankruptcy courts enjoy exclusive jurisdiction over such claims.

Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, the bankruptcy court has no general grant of jurisdictional authority, but is restricted to the provisions of 28 U.S.C. § 1334 which specify the legal controversies that can arise before a bankruptcy court.[5] This grant of jurisdiction may be broken down into four categories: (1) all cases under title 11; (2) all civil proceedings arising under title 11; (3) all civil proceedings arising in cases under title 11; and (4) all civil proceedings related to cases under title 11.[6] *See* 28 U.S.C. § 1334(b); 28 U.S.C. § 157.

---

[5]Federal district courts are provided with a general grant of jurisdictional authority under 28 U.S.C. § 1334(a) and are authorized to refer cases and civil proceedings arising under title 11 to the district's bankruptcy judges. 28 U.S.C. § 157.

[6]In the first category, *cases under title 11*, the term "cases" refers to the bankruptcy case per se, *i.e.*, "the case upon which all of the proceedings which

■ Woodley & Thurston argues that the Bankruptcy Court did not have jurisdiction over its claim for expenses and attorney fees against the Myers. We agree. Because the Bankruptcy Court dismissed or closed the Odessa and Interstate 295 bankruptcy cases without expressly retaining jurisdiction to determine compensation matters, the court divested itself of jurisdiction over Woodley & Thurston's claim. *See In re Talandis*, 95 Bankr. 108, 109 (Bankr. S.D. Iowa 1989) (Bankruptcy Court lacked jurisdiction to consider professional fee application after dismissal of Chapter 11 case); *cf. In re Mandalay Shores Coop. Hous. Ass'n*, 60 Bankr. 22, 23 (Bankr. M.D. Fla. 1986) (Bankruptcy Court did not divest itself of jurisdiction in Chapter 11 case where order of dismissal "clearly and expressly" provided that jurisdiction was retained to determine fee matters).

The Myers contend, nevertheless, that Woodley & Thurston's claim could only be brought in federal bankruptcy court because that court has exclusive jurisdiction over claims involving professional compensation for services rendered in federal bankruptcy proceedings. However, the Myers' contention is not supported by the cases they cite. For example, *Gross v. Irving Trust Co.*, 289 U.S. 342, 344-45, 77 L. Ed. 1243, 53 S. Ct. 605, 90 A.L.R. 1215 (1933) does not stand for this proposition. It simply held that the

---

follow the filing of a petition are predicated." 1 *Collier on Bankruptcy* ¶ 3.01, at 3-21 (15th ed. 1991); *see In re S.E. Hornsby & Sons Sand & Gravel Co.*, 45 Bankr. 988, 993-94 (Bankr. M.D. La. 1985). In the second category, a *civil proceeding arising under title 11* refers to any cause of action or proceeding which is either created by title 11 or which is concerned with " 'matters concerning the administration of the estate' ", in the sense that no adverse third party is involved. *Collier on Bankruptcy*, at 3-24 (quoting 28 U.S.C. § 157(b)(2)(A)). In the third category, a *civil proceeding arising in a case under title 11* refers to a claim or proceeding that secondarily springs from a pending case which arose under title 11. Such claims or proceedings need not be created by title 11, but their existence must be dependent upon the filing of a bankruptcy case. *Collier on Bankruptcy*, at 3-29. In the fourth category, a *civil proceeding related to a case under title 11* refers to a cause of action or proceeding that, in the absence of bankruptcy, could have been brought in a federal district court or state court or to a cause of action or proceeding whose outcome could conceivably have any effect on the bankruptcy estate. *Collier on Bankruptcy*, at 3-27 to 3-28; *see In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988).

bankruptcy court has exclusive jurisdiction over compensation matters *during* bankruptcy proceedings. Thus, the trial court erred in dismissing Woodley & Thurston's claim for lack of subject matter jurisdiction.

## III

Because the trial court had jurisdiction over its claim, Woodley & Thurston argues that it was clearly entitled to payment of the $32,871.95 interim compensation amount previously ordered by the Bankruptcy Court. Woodley & Thurston contends that this portion of its claim should not be relitigated based upon the principles of full faith and credit and res judicata.

■ Under 28 U.S.C. § 1738, which implements U.S. Const. art. 4, § 1, a state court must accord full faith and credit to the judgment of a federal court. *See, e.g., Stoll v. Gottlieb*, 305 U.S. 165, 170, 83 L. Ed. 104, 59 S. Ct. 134, 136-37, *reh'g denied*, 305 U.S. 675 (1938); 1B J. Moore, *Federal Practice* ¶ 0.406[1], at 266-67 & n.7 (1983). The federal constitution's full faith and credit clause, U.S. Const. art. 4, § 1, may require that a federal court's prior judgment be given a preclusive effect in a subsequent state action. *Alcantara v. Boeing Co.*, 41 Wn. App. 675, 678, 705 P.2d 1222 (citing Restatement (Second) of Judgments § 28, comment *e*, at 280-81 (1982)), *review denied*, 104 Wn.2d 1022 (1985).

■ The doctrine of res judicata applies with full force in bankruptcy proceedings. *In re Bono*, 70 Bankr. 339, 342 (Bankr. E.D.N.Y. 1987) (citing *Katchen v. Landy*, 382 U.S. 323, 334, 15 L. Ed. 2d 391, 86 S. Ct. 467, 475 (1966)). Under this doctrine, the effect of a judgment is preclusive if there is: (1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and later suits; and (3) an identity of parties or privies in the two suits. *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1165 (1st Cir.), *cert. denied*, 112 S. Ct. 69 (1991). These elements are in evidence here. First, the Bankruptcy Court's interim award was a final order. Although generally deemed to be interlocutory in nature, an interim compensation order is considered final where, as here, the scope of the order will not be

affected by further proceedings in bankruptcy court. *See In re Dahlquist*, 751 F.2d 295, 297 (8th Cir. 1985) (interim award rendered final by order dismissing underlying bankruptcy proceeding); *In re Yermakov*, 718 F.2d 1465, 1468-69 (9th Cir. 1983) (interim award was final order where the attorneys seeking interim compensation were discharged from further representation of debtors); *accord, In re Spillane*, 884 F.2d 642, 644-45 (1st Cir. 1989) (interim award of attorney fees was final where attorney's authorized services were terminated and no further application would be forthcoming). Moreover, we deem it significant that interim compensation orders are not listed among the orders that are automatically vacated upon the dismissal of a bankruptcy case. *See* 11 U.S.C. § 349(b)(2).

■ Second, because Woodley & Thurston's current claim for payment of the interim amount arose out of its original request for interim compensation in the Odessa bankruptcy proceeding, there was an identity of cause of action in both the earlier and later suits. *See Kale*, 924 F.2d at 1166 (where new claim grows out of same transaction as old claim, the causes of action are considered identical for res judicata purposes).

■ Third, because the Myers' interests regarding the payment of interim compensation to Odessa's attorneys were adequately represented in the bankruptcy proceeding, the Myers were in privity with Odessa. *See Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979, 983 (5th Cir. 1990) (nonparty is in privity with party for res judicata purposes if nonparty has succeeded to party's interest in property, if nonparty controlled prior litigation, or if party adequately represented nonparty's interest in the prior proceeding).

Thus, we hold that the portion of Woodley & Thurston's claim which seeks payment of the interim amount previously ordered by the Bankruptcy Court may not be relitigated.[7]

---

[7]The Myers' contention that the preclusive effect of the Bankruptcy Court's interim compensation order bars Woodley & Thurston from seeking to enforce the order is without merit. The doctrine of res judicata does not bar claims to *enforce* prior judgments, but rather bars the *relitigation* of claims which were

*See United States ex rel. Harrison v. Deutscher*, 115 Bankr. 592, 601-02 (M.D. Tenn. 1990) (claim against former Chapter 11 trustee for fees paid to attorneys was barred under res judicata by prior bankruptcy court judgment awarding fees to the attorneys). Woodley & Thurston is therefore entitled as a matter of law to payment of the interim compensation amount.

■ Woodley & Thurston's final contention is that it is entitled to prejudgment interest on the interim compensation amount. Whether prejudgment interest is awardable on a claim generally depends on whether the claim is a liquidated or readily determinable claim, as opposed to an unliquidated claim. *See, e.g., Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986); *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 442 P.2d 621 (1968). The rule is stated:

> [I]nterest prior to judgment is allowable (1) when an amount claimed is "liquidated" or (2) when the amount of an "unliquidated" claim is for an amount due upon a specific contract for the payment of money and the amount due is determinable by computation with reference to a fixed standard contained in the contract, without reliance on opinion or discretion.

*Prier*, 74 Wn.2d at 32.

Under this analysis, an award of prejudgment interest on the amount previously ordered by the Bankruptcy Court was appropriate because the amount had been liquidated. *Cf.* RCW 6.36.140 (authorizing payment of interest on foreign judgments which became a final judgment of Washington pursuant to this chapter).

We therefore reverse the trial court's dismissal of Woodley & Thurston's claim for expenses and attorney fees.[8] We remand this case to the trial court for trial on those claims not

---

disposed of in a prior judgment. *See Marino Property Co. v. Port Comm'rs of Port of Seattle*, 97 Wn.2d 307, 312, 644 P.2d 1181 (1982). We also reject the Myers' assertion that Woodley & Thurston was required to proceed under RCW 6.36, Uniform Enforcement of Foreign Judgments Act, to enforce the Bankruptcy Court's order, rather than bringing an action in superior court. RCW 6.36.160 expressly states that the enforcement of judgments pursuant to that chapter is optional.

[8] In light of our holding, the Myers' cross appeal obviously fails.

previously litigated and with instructions to enter judgment in favor of Woodley & Thurston for $32,871.95, the interim compensation amount previously awarded by the Bankruptcy Court, together with appropriate prejudgment interest.

GROSSE, C.J., and FORREST, J., concur.

Reconsideration denied October 7, 1992.

Review denied at 121 Wn.2d 1003 (1992).