No. 98-108

293 Mont. 464

976 P. 2d 984

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 56

WATTS AND ASSOCIATES, INC.,

Plaintiff and Respondent,

v.

JEAN PARSONS,

Defendant and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Robert W. Holmstrom, Judge presiding.

No

COUNSEL OF RECORD:

For Appellant:

Jean Parsons, Cascade, Montana (pro se)

For Respondent:

W. Scott Green, West, Patten, Bekkedahl & Green, Billings, Montana

Submitted on Briefs: October 1, 1998

Decided: March 23, 1999

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1. Jean Parsons (Parsons) appeals an order of the District Court for the Thirteenth Judicial District, Yellowstone County, holding that the court has jurisdiction over this matter. Parsons also appeals the court's judgment in favor of Watts and Associates, Inc. (Watts). We reverse and remand for entry of an order dismissing the action by Watts.

¶2. Parsons raises the following issues on appeal:

¶3. 1. Did the District Court have subject matter jurisdiction over an issue resulting from a contract entered into in connection with a bankruptcy proceeding?

¶4. 2. Is Watts estopped from collecting the claimed debt when he failed to comply with the terms of his employment and the confirmed plans of the bankruptcy?

¶5. Because we hold that the District Court did not have jurisdiction over this matter, Issue 1 is dispositive and it is unnecessary for us to address Issue 2.

### Factual and Procedural Background

¶6. On March 12, 1990, Parsons filed a petition with the United States Bankruptcy Court for the District of Montana, Great Falls Division (Bankruptcy Court), under Title 11, Chapter 12 of the United States Code. On August 9, 1990, pursuant to 11 U. S.C. § 327, Watts applied to the Bankruptcy Court for employment as a professional in connection with Parsons' petition for bankruptcy. In his application, Watts requested compensation for his services at a rate of $70.00 per hour. Watts' application for employment was approved and granted by the Bankruptcy Court on August 13, 1990.

¶7. Parsons submitted her First Amended Chapter 12 Plan of Reorganization on September 17, 1990, however, the Bankruptcy Court did not confirm this plan. Parsons submitted a second amended plan on October 18, 1990, which was confirmed by the Bankruptcy Court on October 24, 1990.

¶8. Subsequently, Watts submitted an application to the Bankruptcy Court for his professional fees incurred to that point in the amount of $3,321.50. On February 21, 1991, the Bankruptcy Court awarded Watts $2,258.62 in fees. Parsons paid the fees as ordered by the Bankruptcy Court.

¶9. As a result of a smaller than anticipated calf crop, Parsons' income in 1991 was less than the amount projected in connection with the confirmed Chapter 12 reorganization plan. Hence, on March 16, 1992, Parsons filed a motion to modify that reorganization plan. The Bankruptcy Court granted Parsons' motion on August 24, 1992.

¶10. From May 1, 1991, through March 18, 1993, Watts performed modifications on the reorganization plan. Watts elected, however, not to submit an application for his professional fees for the modifications to the Bankruptcy Court. Parsons made her final payment under the bankruptcy reorganization plan on February 2, 1993, and on April 20, 1993, the bankruptcy was closed and Parsons was discharged of her debts. On February 9, 1994, and March 2, 1994, Watts performed additional services for Parsons in connection with the bankruptcy.

¶11. Watts subsequently requested payment from Parsons in the amount of $6049.61 for professional fees incurred from May 1, 1991, through March 18, 1993, and $292.50 in professional fees incurred on February 9, 1994, and March 2, 1994, along with interest on these amounts. Beginning in January 1993, Watts charged Parsons $90.00 per hour for his services instead of the $70.00 per hour previously approved by the Bankruptcy Court.

¶12. On April 30, 1997, after Parsons had paid only $500 of the requested amount, Watts filed a complaint in District Court claiming a debt against Parsons for professional services rendered. Watts contended that he had not applied for the remainder of his fees under the bankruptcy reorganization plan because he had determined that if Parsons were to pay his fees while the bankruptcy was pending, Parsons would not have sufficient funds remaining to make her final Chapter 12

reorganization plan payment.

¶13. On October 21, 1997, Parsons, acting *pro se*, filed a motion to dismiss the complaint for lack of subject matter jurisdiction. A bench trial was held on November 7, 1997, with Parsons again appearing *pro se*. The District Court issued its Findings of Fact, Conclusions of Law and Order on November 26, 1997, wherein the court determined that it had jurisdiction of this matter and that Parsons was indebted to Watts. The court entered judgment against Parsons on December 9, 1997, in the amount of $9,320.54 plus interest. On December 23, 1997, the Sheriff of Cascade County garnished $975.11 from Parsons' bank account pursuant to a Writ of Execution issued by the District Court.

¶14. Parsons appeals the District Court's order denying her motion to dismiss for lack of subject matter jurisdiction and the court's judgment in favor of Watts. In addition, Parsons seeks the return of the $975.11 garnished from her bank account and her reasonable attorneys' fees and costs incurred in this action.

## Discussion

¶15. *Did the District Court have subject matter jurisdiction over an issue resulting from a contract entered into in connection with a bankruptcy proceeding?*

¶16. The District Court concluded that it did have jurisdiction over this matter because the Bankruptcy Court had divested itself of jurisdiction when Parsons' bankruptcy proceeding was dismissed. Parsons contends, however, that the District Court lacked the authority to override the laws, rules and regulations that govern the Bankruptcy Court proceedings under which Watts was employed. In addition, Parsons argues that the District Court lacked the knowledge to determine whether the amount claimed by Watts was reasonable and necessary to the course of Parsons' bankruptcy proceedings.

¶17. Whether to dismiss a claim based on lack of jurisdiction presents a question of law and we review a district court's conclusions of law to determine whether they are correct. *Balyeat Law, PC v. Pettit*, 1998 MT 252, ¶12, 967 P.2d 398, ¶12, 55 St.Rep. 1038, ¶12 (citing *In re Marriage of Skillen*, 1998 MT 43, ¶ 9, 287 Mont. 399, ¶ 9, 956 P.2d 1, ¶ 9; *Poteat v. St. Paul Mercury Ins. Co.* (1996), 277 Mont. 117, 119, 918 P.2d

**677, 679).**

**¶18. Employment of professional persons in a bankruptcy proceeding and compensation for services rendered by a professional are governed by 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017. Under 11 U.S.C. § 327, the trustee in a bankruptcy proceeding may employ, with the bankruptcy court's approval, attorneys, accountants, appraisers, auctioneers, or other professional persons to represent or assist the trustee in carrying out the trustee's duties. In enacting 11 U.S.C. § 327,**

Congress intended to place the responsibility for payment of professionals *directly under the jurisdiction of the [bankruptcy] court* and its orders. It does not permit the engaging of professionals without court approval when their compensation is to be paid from funds administered in cases pending before the court. *This is also the reason why Congress enacted 11 U.S.C. § 328, requiring the compensation of professionals to be solely with court approval. . . .*

*In re First Federal Corporation* (Bankr.W.D.Va. 1984), 43 B.R. 388, 389 (emphasis added).

**¶19. A bankruptcy court may award to a professional person employed under 11 U.S.C. § 327, "reasonable compensation for actual, necessary services rendered" by the professional person and reimbursement for "actual, necessary expenses." 11 U.S.C. § 330(a)(1). The Bankruptcy Court for the District of Montana has stated that "[p]ursuant to 11 U.S.C. §§ 327-330 and Bankruptcy Rules 2016 and 2017, this Court has an independent judicial responsibility to evaluate fees requested from the estate." *In re WRB-West Associates* (Bankr.D.Mont. 1990), 9 Mont.B.R. 17, 1990 WL 517058 (citing *In re S.T.N. Enterprises, Inc.* (Bankr.D.Vt. 1987), 70 B.R. 823, 831; *In re Seneca Oil Co.* (Bankr.W.D.Okla. 1986), 65 B.R. 902; *In re Frontier Airlines, Inc.* (Bankr.D.Colo. 1987), 74 B.R. 973).**

**¶20. In this case, the District Court determined that it had jurisdiction over Watts' claim against Parsons based on the holdings in *Woodley v. Myers Capital Corp.* (Wash. Ct.App. 1992), 835 P.2d 239, and *Metco, Inc. v. Huffman* (Neb.Ct.App. 1994), 511 N. W.2d 780. However, both *Woodley* and *Metco* are distinguishable from the instant case.**

¶21. In *Woodley*, the attorneys who had represented the debtors in a bankruptcy proceeding brought an action against the debtors' general partners to recover fees. The state court determined that since the bankruptcy court had closed the bankruptcy case without expressly retaining jurisdiction to determine compensation matters, the bankruptcy court had divested itself of jurisdiction over the attorneys' claims for compensation. *Woodley*, 835 P.2d at 243. The court in *Metco* determined that a bankruptcy court's allowance of an administrative claim in a partnership's bankruptcy proceedings constituted a judgment that could thereafter form the basis for the imposition of personal liability upon the general partner in a proceeding in state court. *Metco*, 511 N.W.2d at 788-89.

¶22. In both *Woodley* and *Metco*, the fees in question had already been reviewed by the bankruptcy court and determined to be reasonable and necessary. No such determination was made in the case before us, however, because Watts never submitted his fees to the Bankruptcy Court for review. Furthermore, the District Court is not in a position to determine whether the professional fees stemming from a bankruptcy proceeding are reasonable and necessary. Accordingly, we hold that the District Court did not have jurisdiction over Watts' claim for professional fees incurred during the pendency of the bankruptcy proceedings.

¶23. Watts contends, nevertheless, that the debt which he seeks to enforce was incurred after the bankruptcy was discharged and closed, thus it was not subject to review by the Bankruptcy Court. On the contrary, according to an exhibit prepared by Watts depicting the time when Watts rendered professional services, only $292.50 of the fees he is requesting were incurred after April 20, 1993, the date the bankruptcy was discharged and closed. The remaining $6049.61 in professional fees was incurred during the pendency of Parsons' bankruptcy and was subject to review by the Bankruptcy Court to determine whether those fees were reasonable and necessary.

¶24. In addition, in his application for employment as a professional in connection with Parsons' bankruptcy, Watts requested compensation at the rate of $70.00 per hour. This amount was approved and granted by the Bankruptcy Court. However, in January 1993, nearly four months prior to the discharge of the bankruptcy, Watts increased his rate of compensation to $90.00 per hour, without the approval of the Bankruptcy Court.

**¶25. By failing to submit his fees to the Bankruptcy Court for review, Watts violated the Bankruptcy Court's October 24, 1990 order which provided that payment of any professional fees under 11 U.S.C. §§ 327-330 "shall be made after a determination by this Court that the professional fees requested are reasonable and necessary." More importantly, Watts denied Parsons the protection of the Bankruptcy Court's determination of whether Watts' fees were in fact reasonable and necessary to her bankruptcy proceedings.**

**¶26. "[A]ny order allowing and authorizing compensation under §§ 330 and 331 requires the prior submission by the professional of evidence supporting a finding by the [bankruptcy] court that the compensation sought is reasonable and is for actual and necessary services."** *In re Hathaway Ranch Partnership* **(Bankr.C.D.Cal. 1990), 116 B.R. 208, 217. Rule 2016, F.R.B.P., sets forth the procedure a professional employed in a bankruptcy proceeding should follow to obtain compensation for services rendered and reimbursement of expenses:**

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the [bankruptcy] estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

Indeed, the burden of showing entitlement to all fees requested from a bankruptcy estate is on the applicant. *In re John B. Love* (Bankr.D.Mont. 1993), 163 B.R. 164, 166 (citing *In re Lindberg Products, Inc.* (Bankr.N.D.Ill. 1985), 50 B.R. 220, 221).

**¶27. In its evaluation of Watts' first application for professional fees, the Bankruptcy Court reduced Watts' fees by 32%, implying that not all of the fees requested by Watts in that first application were reasonable and necessary. A similar review of Watts' requested fees for the modifications he performed on the reorganization plan was required, particularly in light of the increase in his hourly rate without prior approval. A bankruptcy court**

has an obligation to ensure that all fees that it approves are reasonable, justifiable, and equitable to all parties concerned. "Even if no objections are raised to a fee application, the Court is not bound to award the fees sought, and in fact has a duty to independently examine the reasonableness of the fees."

*In re Crown Orthodontic Dental Group (Bankr.C.D.Cal. 1993), 159 B.R. 307, 309 (quoting In re Chicago Lutheran Hospital Association (Bankr.N.D.Ill. 1988), 89 B.R. 719, 734). A bankruptcy court "may . . . award compensation that is less than the amount of compensation that is requested." 11 U.S.C. § 330(a)(2).*

**¶28. Watts also contends that during the pendency of the bankruptcy proceedings, he and Parsons entered into an agreement wherein Parsons agreed to pay his fees after the bankruptcy was discharged. However, this agreement, if indeed there was one-- and Parsons contends that there was not--was never brought to the attention of the Bankruptcy Court.**

The Code does not prohibit a debtor and a professional from entering into an agreement with respect to fees. On the contrary, the Code only notes that the reasonableness and ultimate validity of any such agreement is subject to the bankruptcy court's approval.

*Crown, 159 B.R. at 310. By withholding the terms of this agreement from the Bankruptcy Court, Watts denied Parsons the lawful protection of the Bankruptcy Court to review the agreement and determine whether it was reasonable.*

**¶29. Because we hold that the District Court did not have jurisdiction over Watts' claim for professional fees incurred during the pendency of the bankruptcy proceedings, we remand to the District Court for entry of an order dismissing that portion of this action. In addition, while professional fees incurred post-bankruptcy is a matter over which the District Court could have jurisdiction, the $500 that Parsons paid Watts on December 21, 1994, was more than sufficient to cover the $292.50 in post-bankruptcy fees claimed by Watts, thereby precluding any action by the District Court. Consequently, the writ of execution issued by the District Court was invalid, and thus, Parsons is entitled to the return of the $975.11 garnished from her bank account.**

**¶30. Parsons requested her reasonable attorneys' fees and costs incurred in this action. Since Parsons appeared *pro se* throughout this action, there is no basis on which to award attorneys' fees. However, Parsons is entitled to judgment for her costs, § 25-10-102, MCA, and the trial court shall determine those on remand.**

**¶31. Reversed and remanded for entry of an order dismissing this action, returning the money garnished from Parsons' bank account, and for a determination and**

**award of Parsons' costs.**

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER