[No. 65369-5-I. Division One. August 22, 2011.]

KIRK ALAN THOMPSON, *Appellant*, v. KING COUNTY,
*Respondent*.

*Charles S. Hamilton III* (of *Law Office of Charles S. Hamilton III*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Daniel L. Kinerk, Deputy*, for respondent.

¶1 BECKER, J. — The doctrine of res judicata requires an identity of parties and claims between the first and second suits. Because identity of parties and claims was lacking here, the order dismissing appellant's action against King County on grounds that it was precluded by his earlier action against two county correctional officers must be reversed.

¶2 Kirk Thompson, acting pro se, filed a complaint in federal district court on October 16, 2008. The complaint concerned events that allegedly took place while Thompson was an inmate of the King County jail. The defendants were two King County correctional officers, Officer Brian McMillen and Sergeant David Weirich.

¶3 Thompson claimed that several other inmates raped him in the 10th floor shower on February 19, 2007. He said he earlier informed officers McMillen and Weirich that he was being sexually harassed, but they took no action to stop the harassment and the rape was the result of their failure to protect him.

¶4 The complaint alleged that the two officers were being sued "in their individual capacities" under 42 U.S.C. § 1983 for deliberate indifference amounting to negligence and cruel and unusual punishment. It also alleged state law claims, including negligence. The relief sought was a declaratory judgment, injunctive relief, and damages. Thompson's claims for relief were detailed as follows:

CLAIMS FOR RELIEF

11. The actions of C/O McMillen, to ignore the cries of the plaintiff concerning the sexual harassment that he was experiencing which led up to him being viciously raped by his harassers, was deliberate and indifferent, and was done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment. And for the defendant to not intervene to prevent any further provocation constituted the tort of assault and battery and negligence, on the part of the defendant who is under the color of law, and is sworn to protect and serve those who can't protect themselves.

12. The actions of Sgt. Weirich, to not properly supervise his officers and provide a safe living unit on his watch falls to pure negligence, for the Constitution requires prison and jail officials to provide "reasonable safety" for prisoners, and they must protect them from assault by other inmates and from unreasonable hazardous living and working conditions, and must refrain from subjecting them to the unnecessary and excessive use of force.

The plaintiff took action and used the jail's kite system to alert the Sgt. of the ongoing sexual harassment and he verbally told the officer under his supervision C/O McMillen, but both processes failed and this failure falls at the Sgt.'s feet for he is the watch commander and it's his responsibility to take measures to protect prisoners from assault by other inmates, and if they fail to do so courts will award damages to injured prisoners.

¶5 McMillen and Weirich moved for summary judgment. They presented evidence indicating they were unaware Thompson was being sexually harassed or was in need of protection.

¶6 Thompson did not file a response. He agreed to dismiss the case and sent defense counsel a letter in March 2009, enclosing a stipulation:

Enclosed herein please find the original Stipulation of Voluntary Dismissal that has been endorsed by Plaintiff. After weighing the probability of prevailing on the claims presented in this action against the named Defendants, I have determined that such probability is slim, thus the reason for this voluntary dismissal.

If the terms presented are agreeable to you, please sign such and either forward to the court along with a copy to myself . . . or return the original to me.

The stipulation was titled "Stipulation for Voluntary Dismissal [Fed. R. Civ. P.] 41(a)(1)(A)." It was signed by Thompson on March 5 and by defense counsel on March 9, 2009. It reads in its entirety as follows:

The parties, KIRK ALAN THOMPSON, Plaintiff Pro Se, and DANIEL L. KINERK, Attorney for Defendants, do hereby jointly stipulate as follows:

1) The present action shall be withdrawn with prejudice;

2) Each party shall bear their respective costs incurred as a result of this action.

¶7 Thompson later obtained legal representation and filed the present "Complaint for Damages" in superior court on February 5, 2010. The sole defendant named in the present action is King County. The complaint alleges that the county was at all relevant times responsible for the maintenance and operation of the King County jail and was vicariously responsible for the acts and omissions of employees acting within the scope of their employment. Factually, it alleges the same sexual assault described in the previous action. Thompson claims that he notified his jailors that he was apprehensive about the sexual harassment he was receiving from other inmates. "Defendant's employees negligently failed to take reasonable precautions to protect plaintiff from assault in the inmate tank in which he was confined" and as a result he was the victim of rape and suffered injury. The complaint does not identify any employees by name.

¶8 Before Thompson conducted discovery in the present action, the county successfully moved to dismiss it on grounds that it was precluded by the former action Thompson filed in federal court in October 2008. Thompson appeals.

¶9 When reviewing an order of summary judgment, the appellate court must engage in the same inquiry as the trial court. An order of summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Kuhlman v. Thomas*, 78 Wn. App. 115, 119, 897 P.2d 365 (1995).

## FINALITY

██ ¶10 A threshold requirement for the application of res judicata is a valid and final judgment on the merits in a prior suit. *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009), *review denied*, 168 Wn.2d 1028 (2010).[1]

██ ¶11 Thompson's first argument is that his federal court action does not have preclusive effect because it did not end with a final judgment. The county responds, and we agree, that the stipulation for voluntary dismissal that Thompson signed is to be treated as a final judgment.

¶12 Under the Federal Rules of Civil Procedure, a plaintiff, subject to certain rules, "may dismiss an action without a court order by filing: . . . a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii). "Unless the notice or stipulation states otherwise, the dismissal is without prejudice." Fed. R. Civ. P. 41(a)(1)(B).[2]

¶13 Stipulations for dismissal under Fed. R. Civ. P. 41(a)-(1)(A)(ii) "do not require an order of the court." *Meinecke v. H&R Block of Hous.*, 66 F.3d 77, 82 (5th Cir. 1995). Under the rule, a voluntary dismissal by stipulation "is effective immediately upon filing." 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2363, at 448 (3d ed. 2008).

¶14 In an effort to avoid having the stipulation be regarded as a final judgment on the merits, Thompson

---

[1] The test for res judicata under federal law is similar to the Washington test as it requires (1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between the parties. *Frank v. United Airlines, Inc.*, 216 F.3d 845, 850 n.4 (9th Cir. 2000), *cert. denied*, 532 U.S. 914 (2001). Because we find that the result under either test would be the same, we simply apply the Washington test. *See Kuhlman*, 78 Wn. App. at 120 n.3.

[2] The record does not show the stipulation was filed with the federal court. Thompson suggests this renders the stipulation ineffective because the rule requires "filing." But he did not make this argument in the trial court, where the county might have been able to supply proof of filing if put on notice that it was going to be an issue. Because the issue was not preserved, we do not consider it. RAP 2.5(a).

presented a declaration stating he did not intend for it to "voluntarily end my ability to legally pursue all of the damage inflicted upon me." He pointed out that the document, although titled a "Stipulation for Voluntary Dismissal," actually stipulates that the action shall be "withdrawn," not dismissed. According to Thompson, his declaration raises a material issue of fact about his intent in signing the stipulation that should have prevented the court from granting the order of summary judgment.

¶15 Thompson does not cite authority for interpreting the word "withdrawn" in this context as if it negated the word "dismissal." The procedural posture of the case indicates the parties intended the stipulation as a final judgment on the merits. Thompson could not have withdrawn his claims unilaterally because the defendants had answered and their motion for summary judgment was pending. Fed. R. Civ. P. 41(a)(1)(A)(i). Instead of allowing the case to end with an involuntary dismissal, he accepted terms: the dismissal would be with prejudice and each party would bear their own costs. McMillen and Weirich were assured that their exposure to liability was at an end, while Thompson was guaranteed that he would not have to pay defense costs.

¶16 Thompson argues that the stipulation should not be strictly construed because he was acting pro se when he agreed to it and the Ninth Circuit gives a liberal construction to pro se pleadings. *See Garaux v. Pulley*, 739 F.2d 437, 439 (9th Cir. 1984) ("The rights of *pro se* litigants require careful protection where highly technical requirements are involved, especially when enforcing those requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits."). But Thompson is not just asking for liberal construction; he is asking to have the terms of his agreement rewritten. This is not permitted in either federal court or state court.

¶17 Thompson argues that only his federal claims were resolved by the stipulation because the court never ac-

cepted supplemental jurisdiction over his state claims. But the stipulation for dismissal referred to "the present action" without differentiating among the various claims it included. The court rule is to be used to dismiss an "action," not particular claims or particular defendants. 9 WRIGHT & MILLER, § 2362, at 409. The federal court did not have to accept supplemental jurisdiction in order for the stipulation to have the effect of dismissing Thompson's entire action. The voluntary dismissal was effective without a court order. *Meinecke,* 66 F.3d at 82.

¶18 Given the plain language of the stipulation and the circumstances under which it was signed, we conclude it was a final judgment on the merits. This threshold requirement for res judicata is satisfied.

## IDENTITY OF PARTIES

¶19 Identity of parties is a prerequisite for application of res judicata. *Kuhlman,* 78 Wn. App. at 120. The county recognizes that the defendants in Thompson's two actions are not identical. Nevertheless, the county contends that Thompson's present action against the county is precluded because his claims were, or should have been, litigated in the former action, which was the conclusion reached in *Kuhlman.*

¶20 In *Kuhlman,* the plaintiff was disciplined by his employer, the Seattle Housing Authority, for harassing other employees. He first sued the housing authority in federal court on various theories, all dependent on proof that the sexual harassment accusations by his co-workers were false. This suit was dismissed with prejudice. Kuhlman later sued his supervisors and the complaining employees in state court, the suit again dependent on proof that the accusations were false. The trial court's decision to dismiss this action with prejudice on res judicata grounds was affirmed on appeal because the housing authority and the defendant employees were essentially the same party.

¶21 Because the county relies so heavily on *Kuhlman*, we quote from it extensively:

Under the doctrine of res judicata, a plaintiff is barred from litigating claims that either were, or should have been, litigated in a former action. *Schoeman v. New York Life*, 106 Wn.2d 855, 859, 762 P.2d 1 (1986) (quoting *Meder v. CCME Corp.*, 7 Wn. App. 801, 804-05, 502 P.2d 1252 (1972), *review denied*, 81 Wn.2d 1011 (1973)). The purpose of this doctrine is to eliminate duplicitous litigation (i.e., the splitting of claims) and yet allow a party to litigate matters not properly included in the former action. *Schoeman*, 106 Wn.2d at 859 (quoting *Meder*, 7 Wn. App. at 804-05). Accordingly, dismissal on the basis of res judicata is appropriate in cases where the moving party proves a concurrence of identity between the two actions in four respects: (1) persons and parties; (2) cause of action; (3) subject matter; and (4) the quality of the persons for or against whom the claim is made. *Schoeman*, 106 Wn.2d at 858 (citing *Norco Constr., Inc. v. King County*, 106 Wn.2d 290, 721 P.2d 511 (1986)). Only the first three elements are at issue in this case.

A

Same Parties

Kuhlman first contends that res judicata does not apply because the parties in each suit are not identical. In particular, he points to the fact that [SHA] was the only named defendant in *Kuhlman* I and that SHA employees and officials were the only named defendants in *Kuhlman* III. As SHA points out, however, courts, as a rule, view different defendants between suits as the same party as long as they are in privity. *See Woodley v. Myers Capital Corp.*, 67 Wn. App. 328, 337, 835 P.2d 239 (1992), *review denied*, 121 Wn.2d 1003 (1993). In this regard, a number of federal circuits have concluded that, in general, the employer/employee relationship is sufficient to establish privity. The Fifth Circuit stated as follows in *Lubrizol Corp. v. Exxon Corp.*, 871 F.2d 1279, 1288 (5th Cir. 1989), *cert. denied*, 113 S. Ct. 186 (1992):

Most other federal circuits have concluded that employer-employee or principal-agent relationships may ground a

claim preclusion defense, regardless which party to the relationship was first sued. The doctrinal basis for these decisions has varied according to their fidelity to traditional mutuality or privity concepts, but they share a common practical thread. Where a plaintiff has sued parties in serial litigation over the same transaction; where plaintiff chose the original forum and had the opportunity to raise all its claims relating to the disputed transaction in the first action; where there was a "special relationship" between the defendants in each action, if not complete identity of parties; and where although the prior action was concluded, the plaintiff's later suit continued to seek essentially similar relief—the courts have denied the plaintiff a second bite at the apple.

(Citations omitted.)

Here, there is no question that the named defendants between the two proceedings are different. Nevertheless, based upon the nature of the relationship between the defendants in *Kuhlman* I and *Kuhlman* III and the nature of Kuhlman's claims, we find that there was privity between the parties. SHA's liability in the first complaint, *Kuhlman* I, was premised entirely on the actions of its employees. In particular, Kuhlman specifically complained that the employees' accusations were false and that, as a consequence, SHA officials had wrongfully suspended and demoted him. The suit against SHA was therefore essentially a suit against its employees. That is to say, whether SHA violated Kuhlman's rights turned on the propriety of its employees conduct. Having defended that suit, SHA essentially acted as their representative, protecting their interests in the first suit. *See Woodley*, 67 Wn. App. at 337 (stating that a nonparty is in privity with a party for res judicata purposes if the party adequately represented the nonparty's interests in prior proceeding) (citing *Latham v. Wells Fargo Bank*, 896 F.2d 979, 983 (5th Cir. 1990)). Under these circumstances, the parties must therefore be viewed as sufficiently the same, if not identical.

*Kuhlman*, 78 Wn. App. at 120-22 (footnote omitted).

 ¶22 *Kuhlman* is not a satisfactory analogy to the present case. Kuhlman's actions both depended on his

proving that the complaining employees had lied. Thompson's action against McMillen and Weirich depended on his proving that they were negligent; that is not true of his action against the county. Kuhlman's actions were both essentially against the same employees, who were excused from defending the second action because the housing authority had already defended them in the first. Thompson's actions are concerned with different employees. McMillen and Weirich protected their own interests in the first action. They protected the county's interests only to the extent that the county is vicariously liable for their conduct. Thompson's present action alleges that unnamed county employees knew he was in danger and failed to protect him. To the extent that the county is responsible for the actions of jailers other than McMillen and Weirich, its liability remains yet to be adjudicated.

¶23 The *Restatement (Second) of Judgments* § 51 (1982) recognizes two exceptions to the general rule of privity between employer and employee:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other:
>
> (1) A judgment against the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:
>
> (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or
>
> (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

RESTATEMENT (SECOND) OF JUDGMENTS § 51, *quoted in Ensley*, 152 Wn. App. at 905-06.

¶24 The nature of Thompson's claim brings him within these exceptions. With respect to the first exception, the present action alleges that the county is responsible for the maintenance and operation of the jail. This amounts to a colorable claim that as a custodian, the county is liable for breach of a duty that arises independently of its vicarious liability for negligence by its correctional officers. *See, e.g.,* *Shea v. City of Spokane,* 17 Wn. App. 236, 562 P.2d 264 (1977), *aff'd,* 90 Wn.2d 43, 578 P.2d 42 (1978). With respect to the second exception, officers McMillen and Weirich were dismissed in the first action on the basis of a defense personal to themselves: that they had no knowledge of Thompson's being harassed or raped. Their defense does not rule out the possibility that other correctional officers did have knowledge and did fail to protect Thompson.

¶25 We conclude King County does not have sufficient identity with the defendants in the first action to permit the application of res judicata.

## IDENTITY OF CLAIMS

¶26 For res judicata to apply, there must also be an identity of claims or causes of action between the first and second suits. *Kuhlman,* 78 Wn. App. at 120. Identity of claims is measured by a four-part test:

> "(1) [w]hether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."

*Rains v. State,* 100 Wn.2d 660, 664, 674 P.2d 165 (1983) (alteration in original) (quoting *Costantini v. Trans World Airlines,* 681 F.2d 1199, 1201-02 (9th Cir. 1982)).

¶27 In *Kuhlman,* this court found all of these criteria to be satisfied:

First, it is clear that *Kuhlman* I and *Kuhlman* III arise out of the same transactional nucleus of facts. In particular, the basis for both suits is predicated on employee reports of sexual harassment and Kuhlman's subsequent suspension and demotion. Second, the evidence needed to support each action is identical. Indeed, Kuhlman has not set forth any facts in *Kuhlman* III that differ from *Kuhlman* I. Third, both suits allege infringement of the same rights: the right not to be deprived of due process and the right not to be adversely affected by false allegations of sexual harassment. Fourth, the rights established in *Kuhlman* I would be impaired by a judgment in *Kuhlman* III.

*Kuhlman*, 78 Wn. App. at 122-23.

¶28 Here, both suits arguably involve infringement of the same right, Thompson's right to be protected from being harmed by other inmates. But because the present action does not necessarily depend on proving the misconduct of McMillen or Weirich, it cannot be said with certainty that it arises out of the same transactional nucleus of facts or that the same evidence would be used to prove liability. Moreover, the exoneration of McMillen and Weirich as determined in the first action would not be impaired by a judgment in this action against the county. Again, this is different from *Kuhlman*, where a judgment in the later action against particular employees would have been inconsistent with the judgment in the first action that determined the same employees were not at fault. *Kuhlman*, 78 Wn. App. at 123.

¶29 Thompson's federal court action determined that officers McMillen and Weirich were not personally liable for any claims arising out of the alleged sexual assault. A judgment against the county in the present action would impair the rights established in the earlier action only if Thompson were now trying to hold the county vicariously liable for conduct by McMillen and Weirich. Thompson disavows having the intention to prove the culpability of McMillen and Weirich. He recognizes that the final judg-

ment in his first action is res judicata as to those two officers. We conclude the county has failed to establish identity of claims.

¶30 Because the county has not established identity of parties or identity of claims, it cannot be said that Thompson's present action against the county attempts to litigate matters that were or should have been litigated in the former suit.

¶31 Reversed.

ELLINGTON and SPEARMAN, JJ., concur.